KINGMAN & CO. v. WESTERN MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1899.)

No. 763.

DAMAGES—BREACH OF CONTRACT OF SALE—GOODS TO BE MANUFACTURED.

The measure of damages for breach of a contract to purchase goods to be manufactured by the seller, where the goods are not manufactured and ready for delivery at the time the seller is notified that they will not be accepted, if no materials have been purchased, and no labor expended towards their manufacture, is the difference between the cost to the seller of their manufacture and delivery and the contract price, if such price is greater than their cost. If materials have been purchased, the difference between their market value and their cost, if the cost is

greater, is to be added. If materials have been purchased, and labor has been expended towards their manufacture, the difference between the market value of the partly finished articles and the cost of the materials and the labor expended thereon, if the cost is the greater, is to be added.

In Error to the Circuit Court of the United States for the District Nebraska.

James H. McIntosh, for plaintiff in error.

Walter J. Lamb and George A. Adams, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action for a breach of a contract to order and purchase from the Western Manufacturing Company, the defendant in error, agricultural implements of the peculiar character which it made. The manufacturing company was a corporation engaged in the manufacture and sale of agricultural implements at Lincoln, in the state of Nebraska, and Kingman & Co., the plaintiff in error, was a corporation engaged in the purchase and sale of such implements in the states of Illinois, Missouri, Kansas, Nebraska, Iowa, and South Dakota. On May 8, 1893, Kingman & Co. agreed to order of the defendant in error, at the respective dates, and to pay for at the respective prices stated below, the following implements manufactured or to be manufactured by the defendant in error, to wit: On or before October 1, 1893, 160 Kingman and Weir Standard mowers at $25 or $26 each, according to the length of the cutter bar; on or before May 8, 1893, 1,800 Defiance hand cornshellers at $4.35 each, with a fan and feed table, and at $4 without a fan and feed table; and between August 1 and December 1, 1893, 1,200 Climax end gates at $1.25 each. The defendant in error brought this action for a breach of this contract, and alleged that it made and tendered all these articles to the plaintiff in error, but that Kingman & Co. refused to order, accept, or pay for any of them except 54 mowers and 400 cornshellers, and it sought to recover as damages the difference between the market value and the contract price of 106 mowers, 1,400 cornshellers, and 1,200 end gates. The evidence, however, failed to show that at the time of the breach of the contract, which the witnesses for the defendant in error fixed on November 22, 1893, the defendant in error had made or tendered, or had on hand to tender, any of these implements except the 106 mowers, while the fact was established that it had no end gates and no finished cornshellers, and only about 800 cornshellers in process of manufacture at that time. In other words, on November 22, 1893, when Kingman & Co. refused to order or receive any more implements under this contract, the manufacturing company did not have in its possession or control, and could not and did not tender, the 1,200 end gates nor 600 of the cornshellers required by the contract. The court below, over the objection of the plaintiff in error, gave to the jury the rule for the measure of the damages of the defendant in error which would have been applicable if it had proved the manufacture and tender of all the goods. It charged them that, if they found for the defendant

in error, it was entitled to recover the difference between the contract price and the market value of all the articles covered by the contract, whether they had been manufactured or not at the time of the breach. The principal question in the case is whether this was the true rule for the measure of the manufacturer's damages which resulted from the failure of the purchaser to order and take the 600 cornshellers and the 1,200 end gates which it had not made, or commenced to make, when the purchaser refused to order or take any more implements under the contract.

Compensation is the true measure of damages. The injured party may recover what he loses by the breach of his contract, but he cannot recover more, and his recovery must always be limited to the losses which he necessarily suffered from the breach. After he has received notice that the defaulting party will not perform the contract, he may not unnecessarily incur further liabilities or expenses in its performance, and then charge the increased loss he thus incurs to the defaulter. When, on November 22, 1893, the defendant in error received notice from Kingman & Co. that the latter would accept no more implements under the contract, the manufacturing company was bound to refrain from adding to its own loss and to that of the plaintiff in error by making the implements it had not commenced to make; and, if it did so, it cannot be permitted to recover the increased loss it thus voluntarily incurred. Danforth v. Walker, 37 Vt. 239, 244. When the manufacturing company received this notice there were 600 cornshellers and 1,200 end gates which it had not commenced to make, and which it never did in fact manufacture. Was it entitled to recover the difference between the market value and the contract price of these implements? The general and the just rule for measuring the damages for a breach of a contract for the sale of personal property is the difference between its market value and its contract price, because the vendor is presumed to have the property on hand; and his profits if the contract is performed, and his loss if it is broken, is the exact difference between the price he can sell the property for in the market and the price he is entitled to receive for it under the contract. This was the true measure of the loss of the defendant in error on the 106 mowers which it had made and was ready to deliver when the contract was broken, because it had them on hand, and it was entitled to their contract price; while after the breach it could obtain only their market value, so that it necessarily lost the difference. But the difference between the market value and the contract price in no way measured the loss the manufacturing company sustained on the 600 shellers and the 1,200 end gates which it never made or had. It could not sell these at the market price, for it did not have them. What it did have under the contract, at the time of this breach, was the right to manufacture and deliver these articles, and to receive the contract price for them. When the breach was made, it was deprived of this right, and its loss was necessarily the difference between the expense it would have incurred in manufacturing and delivering them and the contract price it would have received; or, in other words, the profit it would have made upon them if it had

performed the contract. A simple illustration will make the soundness of this view clear. The contract price of one of the shellers was four dollars, the cost of making it was three dollars, and its market value at the time of the breach was two dollars. If the defendant in error had already made, at an expense of three dollars, and had in its possession, one of these shellers, at the time of the breach, its loss upon it was two dollars, because it lost its profit, the difference between its cost and the contract price, one dollar, and also one dollar of its cost, since it could not have sold it for more than the market value, two dollars. But on a sheller which it had not made it lost none of the cost, because it had not incurred or paid any, and its only loss was the difference between the three dollars it would cost it to make the sheller and the contract price it would have received if it had made and delivered it. In this way it appears that the application by the court of the general rule for the measure of damages upon sales to the loss upon these unmanufactured implements entailed upon the plaintiff in error a loss, much heavier than that which the manufacturing company actually suffered.

The distinction we have pointed out exists in the authorities as well as in reason. . In U. S. v. Speed, 8 Wall. 77, the government agreed to pay Speed for slaughtering and packing 50,000 hogs, which it was to furnish. It provided only 16,107, and Speed sued for damages. The court held "that the true measure of damages was the difference between the cost of doing the work and what the claimant was to receive for it, making reasonable deductions for the less time engaged, and for release from the care, trouble, risk, and responsibility attending a full execution of the contract." In Hinckley v. Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, the steel company sued Hinckley for a breach of a contract to furnish it drilling directions for, and to buy of it, 6,000 tons of steel rails, which it was to manufacture. None of the rails were actually rolled, but the court assessed the damages on the basis of the difference between the amount it would have cost the plaintiff to manufacture the rails and their contract price. In Danforth v. Walker, 37 Vt. 239, 244, and Id., 40 Vt. 260, the defendant agreed to buy of the plaintiff 1,500 bushels of potatoes, but after the delivery of about 400 bushels, and before the plaintiff had obtained all of the remainder, the defendant gave him notice to buy no more. The court held the measure of damages on those which the plaintiff had not bought when he received the notice was the difference between what it would have cost him to buy and deliver them and the contract price. In Kingsland & Ferguson Mfg. Co. v. St. Louis Malleable Iron Co., 29 Mo. App. 527, 540, the defendant agreed to purchase about 10,000 pounds of castings, which the plaintiff was to manufacture, but broke the contract when only about 5,000 pounds had been made. The court held that the measure of damages was the difference between the market value and the contract price of those manufactured at the time of the breach and the difference between the contract price and the amount it would have cost the plaintiff to manufacture and deliver those that were not made at that time.

The following rules for the measure of damages for the breach of a contract to manufacture and deliver articles will be found to be sustained by the authorities, based upon the rule of compensation, just and applicable to the facts of this case:

1. The measure of damages for a breach of a contract to purchase personal property is the difference between the market value and the contract price of the property at the time of the breach, if the latter be greater than the former.

2. The same rule is applicable to the measure of damages resulting from the failure to accept articles which have been made and are ready for delivery at the time of the breach by the purchaser of the contract to purchase goods of a manufacturer, but it is not the true rule for the measure of damages resulting from the breach on account of those not then made and ready for delivery.

3. Where materials have been purchased and labor has been bestowed upon such articles under such a contract before the manufacturer has notice of the breach, his damages on these articles are the difference between the amount it would cost him to make and deliver them and their contract price, if greater, plus the difference between the value of the partly manufactured articles and the cost of the labor and materials that had been bestowed upon them at the time of the breach, if the cost be greater than the value.

4. If materials have been purchased with which to fulfill the contract, but no work has been bestowed upon them at the time of the breach, the measure of the manufacturer's damages upon the articles which might have been made with such materials under the contract is the difference between the amount it would cost him to make and deliver them, including the cost of the materials, and their contract price, if greater, plus the difference between the cost and the market value of the materials that have been purchased at the time of the breach, if the market value be less than the cost.

5. The measure of the damages upon articles covered by such a contract for which no materials had been bought, and upon which no work had been expended at the time of the breach, is the difference between the amount it would cost the manufacturer to make and deliver them and their contract price, if that price is greater than the cost.

The application by the court below of the general rule for the measure of damages upon a breach of a sale of personal property to the measure of the damages for a refusal to take from the manufacturer in this case articles that had never been made under the contract, was erroneous, and compels a reversal of the judgment. There are other errors assigned, but none which present questions that demand discussion, or that would be liable to raise a doubt in the mind of the court below upon a second trial of the case. The judgment is accordingly reversed, and the case is remanded to the court below, with directions to grant a new trial.