### WESTERN MFG. CO. v. KINGMAN & CO.

#### (Circuit Court of Appeals, Eighth Circuit. November 25, 1901.)

#### No. 1,548.

1. CONTRACT—BREACH—EVIDENCE CONSIDERED.

Defendant contracted to purchase from plaintiff a quantity of agricultural implements, to be manufactured by plaintiff, among others a number of mowers, which were to be ordered prior to October 1st. Some time in October, in a conversation between representatives of the parties, only a portion of the mowers having been ordered by defendant, the disposition to be made by plaintiff of the remaining number was discussed, the contract with respect to the purchase of the same being treated by both parties as still in force. Plaintiff offered to store the mowers for defendant in its warehouse, but defendant thought it would order them shipped to its own warehouses, and promised to write in reference thereto. A few days later plaintiff's agent wrote defendant "relative to the disposition of the balance of mowers due on your contract," and asking for shipping directions. To this letter defendant replied, stating: "We have been considering the same as to what we could do as to taking these mowers, and write to say that it is out of the question for us to do so, and do not see any way but you will have to store them." *Held,* that such language, considered in connection with the previous conversation and letter of plaintiff, could not be held, as matter of law, to be a refusal to accept the mowers under the contract, and to constitute a breach of the contract, which absolved plaintiff from the duty of thereafter performing the same on its part.

2. TRIAL—CONSTRUCTION OF WRITINGS—WHEN QUESTION FOR JURY.

While letters and written instruments are as a rule for the court to interpret, they are not always so, especially where their interpretation involves a consideration of extraneous facts.

3. CONTRACTS—ACTION FOR BREACH—INSTRUCTIONS.

Instructions given and refused in an action for breach of contract considered, and the action of the trial court approved.

In Error to the Circuit Court of the United States for the District of Nebraska.

This action was instituted to recover damages alleged to have been sustained by the Western Manufacturing Company, plaintiff in error, by reason of a breach of contract on the part of Kingman & Co., a corporation, defendant in error. The manufacturing company was located at Lincoln, Neb., and was engaged in the business of manufacturing agricultural implements. Kingman & Co. was located at Peoria, Ill., and was a dealer in agricultural implements. The contract was in writing, dated May 8, 1893, and for the consideration therein stated obligated Kingman & Co. to order from the manufacturing company between May 8 and October 1, 1893, 160 mowers, and between May 8 and December 31, 1893, 1,800 corn shellers, and between August 1 and December 1, 1893, 1,200 Climax end gates. The defense was that, by mutual consent, the performance of the contract, within the time limit as fixed, was waived by plaintiff, and that defendant from time to time prior to December 15th ordered articles of merchandise specified in the contract to be shipped to it, but that plaintiff failed and refused to honor such orders, and that on December 15th the contract was rescinded by mutual consent of the parties. Plaintiff, by its replication, denied the allegations of the answer. The trial resulted in a verdict and judgment for the defendant. The case is brought here by writ of error. The assignments of error relate exclusively to alleged misdirections of the jury by the trial court, and failure to charge as requested by plaintiff. The particulars will be sufficiently referred to in the opinion.

E. P. Smith and W. J. Lamb, for plaintiff in error.

James H. McIntosh, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The evidence introduced by both parties, on the issues of waiver, default, and rescission is mainly confined to certain correspondence, which appears in the record, and to certain interviews between L. M. Welch, who was plaintiff's agent, and Martin Kingman, who was president of the defendant corporation. Welch testifies that he had an interview with Kingman soon after October 1, 1893, at Chicago, in which he reminded him that he had not sent orders as he promised for the mowers, and that the time within which he was to do so, under the contract, had expired, and he says he insisted on his complying with the terms of the contract and taking the mowers. Welch testifies that Kingman said he would go home and write to his different branch houses, and see if they could store them, and he would send orders for them. He says he thinks he mentioned to Kingman at that time that, if he did not care to order them away, his company, the plaintiff, was a licensed warehouse, and that the defendant might leave the mowers with it on storage, taking warehouse receipts therefor, and settle for the mowers as on actual delivery. He says Kingman responded that he did not care to have the mowers stored except in his own building, and that he had plenty of room in which to store his own goods. He says he told Kingman that that was all right; that he had simply suggested that course for his convenience; and that Kingman then said, "I will take the mowers and send you the orders."

.It appears that the plaintiff afterwards, on November 9th, wrote the following letter to the defendant:

                              "Lincoln, Nebraska, Nov. 9th, 1893.

"Kingman & Co., Peoria, Illinois—Gentlemen: Your Mr. Kingman, whom the writer met in Chicago on the 26th inst. [? ult.], stated that we would hear from you in a short time relative to the disposition of the balance of mowers due on your contract. We hope you can give us shipping directions at once. On account of the fire we had, we are very much cramped for room, and need the room these mowers occupy for a paint shop. Please favor us by return mail. We have the following Defiance shellers on hand, partly completed: 394, no fan; 397, with fan,—and we will begin work on these next week, and complete them as rapidly as possible, and would be pleased to have you order now for two or three cars, so we can ship them out as fast as finished."

To this letter, the defendant, on November 18, 1893, made the following answer:

"Western Manufacturing Company, Lincoln, Nebraska—Gentlemen: Yours of the 9th, requesting shipping instructions for mowers, is received and noted. We have been considering the same, as to what we could do as to taking these mowers, and write to say that it is out of the question for us to do so, and do not see any way but you will have to store them. We note as to shellers, and were obliged to order a car from other parties, to fill the place of car ordered to Des Moines. We have now written Omaha asking if they are about ready to place an order for another car, and giving them the number of shellers you have on hand. We expect an order in a few days, and will forward same to you. The writer was at Omaha last week, and while there talked over matters with Mr. Carson. He says there is but little demand for shellers in Nebraska; that the trade is very light, but that he will need some shellers soon. We will write him again concerning your stock, and will try and draw from you soon."

The foregoing shows that the manufacturing company waived the provision of the contract requiring Kingman & Co. to order before October 1, 1893, the full complement of 160 mowers. For some reason, unexplained by the evidence, orders had been made before that day for only 54 mowers; but the parties treated the obligation of the contract with respect to the mowers as in effect and binding upon them thereafter. The trial proceeded on that theory. The court charged the jury that the facts showed a waiver of the element of time, and said: "The mere failure to order the mowers on or before the 1st of October does not constitute an actionable breach of the contract for which the plaintiff can recover in this action." There was no exception to this charge. Accordingly we may treat the element of time within which the mowers were to be ordered as eliminated from the contract sued on, leaving the obligation, in respect thereto, to order the same within a reasonable time.

We can now intelligently consider the first and second assignments of error.

The plaintiff requested the trial court to give the jury the following instruction:

"There is evidence before you showing that after the 1st day of October, 1893, the time within which, under the contract, the defendants were to order the mowers of the plaintiff, the plaintiff's agent, Welch, met Kingman, the president of the defendant company, at the city of Chicago, and it is claimed that, 'in the conversation then had between them, Kingman promised the plaintiff's agent that he would soon forward to the plaintiff orders for the

mowers, or for the balance of them, to which Welch assented. If you are satisfied that such is the case, that would be a waiver by both parties so far as the time for ordering the mowers was concerned, as specified in the contract. It is claimed, however, that the plaintiff, not receiving any such orders, afterwards wrote the letter of November 9, 1893, to the defendant, in which he referred to such conversation, and called the defendant's attention to the fact that the defendant had stated that they would hear from them in a short time relative to the disposition of the balance of the mowers due on the contract, and stated that they hoped the defendant would give them shipping directions at once; that on account of the fire they were cramped for room, and needed the room the mowers occupied for a paint shop. It further appears in evidence that following this, on November 18, 1893, the defendant wrote to the plaintiff acknowledging their letter of the 9th requesting shipping instructions for mowers, and stated that they had been considering the same as to what they could do as to taking these mowers, and that it was out of the question for them to do so, and they did not see any way but that the plaintiff would have to store them. Now, the court instructs you that if you are satisfied from the evidence that such a conversation occurred as is testified to at Chicago, that the letters referred to passed between the parties, then the letter of November 18th, written by the defendant to the plaintiff in answer to theirs of the 9th, was a breach of the contract on the part of the defendant, and entitled the plaintiff to bring action thereon at once; that the plaintiff had the right to treat the refusal of the defendant to take the mowers as a breach of the entire contract, without regard to whether the defendant was ready and willing to take the corn shellers and end gates under the contract or not; that, after such refusal by letter on the part of the defendant to take any more mowers, the contract was at an end, unless you are satisfied from the evidence that the plaintiff waived this breach on the part of the defendant at the interview held on November 22, 1893, at Peoria; that in considering the evidence as to whether they did or not, and as to what took place at that interview, you should take into account the time at which it occurred, the conduct of each of the parties prior thereto, and the correspondence between them that led up to that meeting."

The court refused to give this instruction, and such refusal is the basis of the first assignment of error.

By this request the court was asked to interpret the letter of November 18th, in the light of the Chicago interview between Welch and Kingman, as an absolute refusal to take the mowers, and as creating a breach of the contract.

The October interview at Chicago, as already seen, related in part to the difficulty of the defendant storing the mowers, and to a consideration of Welch's proposition to store them for the defendant in plaintiff's licensed warehouse, and resulted, according to Welch's testimony, in a statement by Kingman that he would send orders for and take the mowers. This interview, taken in connection with the letter of November 9, 1893, in which the manufacturing company says: "Your Mr. Kingman, whom the writer met in Chicago on the 26th ult., stated that we would hear from you in a short time relative to the disposition of the balance of mowers due on your contract,"—must be taken into consideration in interpreting the letter of November 18th in question. This letter must be read in the light of its antecedents on the same subject, namely, the Chicago interview, in which the subject of plaintiff storing the mowers for defendant was considered, and the letter of November 9th, in which plaintiff said that Kingman stated in Chicago that plaintiff would hear from him in a short time, not in the way of making orders for the mowers,

· but relative to the disposition of the balance of the mowers. In the light of these antecedents, the language employed in the letter of November 18th, wherein defendant said: "It is out of the question for us to do so [take the mowers], and do not see any way but you will have to store them,"—may, and probably does, have a meaning other than an absolute refusal to take any mowers, or the announcement of the final rupture of the contract.

Its meaning, in the light of the facts and circumstances already adverted to, is at least uncertain; and while it might have warranted a submission to the jury, under proper instructions, to determine, in the light of all the facts and circumstances, whether·it was intended thereby to be an absolute refusal to take any more mowers under the contract, it cannot, in and of itself, be judicially so construed. Letters and written instruments are, as a rule, for the court to interpret, but they are not always so; especially when their interpretation involves a consideration of extraneous facts.

It would, in our opinion, have been error if the court, in view of all the facts and circumstances of the case, had declared, as requested in the instruction under consideration, that the letter of November 18th constituted a breach of the contract by defendant.

The next instruction requested by plaintiff, and refused by the court, to which exception was taken, is as follows:

"The court further instructs you that no mere negotiations between the parties, that proceeded upon the ground that the contract was broken by the defendant refusing to take the mowers had with a view to a settlement between them of the broken contract, should be considered as keeping the contract open or in force; nor would any order for shellers made by letter at any time after its breach, if the defendant persisted in refusing to take the mowers, be available to the defendants to keep the contract open or in force, nor would the plaintiff be bound after the contract was broken, if you so find, to receive or fill any such orders for shellers under the contract. In other words, if you are satisfied from the evidence that the defendants, at the meeting of November 22d, persisted in their notice given by letter not to take any of the mowers, that would be such a breach of the contract as would relieve the plaintiff from filling any orders for shellers which the defendants forwarded after that day. Further, if you are satisfied from the evidence that at the meeting of November 22, 1893, the defendants persisted in the stand which they had taken in their letter of November 18, 1893, that they would not take any more mowers, and if you are satisfied that after that they wished to withdraw or retire from that attitude, it became and was their duty, in ordering other goods, to so notify the plaintiff, and that they then stood ready and willing to carry out the contract according to its terms."

It is unnecessary to analyze the foregoing request, further than to observe that it is predicated upon the erroneous interpretation given to the letter of November 18, 1893, already pointed out. It contains the hypothesis, as follows: "Further, if you are satisfied from the evidence that at the meeting of November 22, 1893, the defendants persisted in the stand which they had taken in their letter of November 18, 1893, that they would not take any more mowers. * * *" As already determined by us, the letter of November 18th is susceptible of a different interpretation, and the court would have erred in giving the instruction in question without substantial modification. The instruction is complicated in the extreme, and probably would

not have enlightened the jury at all on the real issues of this case, if it had not contained the vice to which attention has just been called; but, with that vice in the instruction as requested, it embodied an erroneous declaration of principle, and there was no error on the part of the court in refusing it.

In order to appreciate the remaining assignments of error, it is necessary to refer again to the evidence. After receiving the letter of November 18th, the manufacturing company sent its agent, Welch, to Peoria, and on November 22d an interview was had between him and Kingman. Welch testifies that this interview amounted to a positive refusal on the part of Kingman to take any more mowers, shellers, or end gates under the contract. Kingman and witness Schimpf, the secretary of Kingman & Co., testify that the interview consisted only in a demand by Welch for a settlement, by the execution of notes as provided in the contract of May 8th, for all the machines and end gates ordered and to be ordered pursuant to the obligation of the contract, and that Kingman declined to make a settlement except for such machines as had been delivered, claiming that his company was not in default, but that the manufacturing company had failed to deliver shellers theretofore ordered, and was not then able to deliver the same, or any end gates, as required by the contract, and that the interview resulted in a settlement for goods already delivered, with no repudiation of the contract, as testified to by Welch. Kingman testifies that his company was at that time ready, willing, and able to carry out and perform its part of the contract of May 8, 1893. Some correspondence ensued after this interview in which Kingman & Co. made orders for considerable quantities of corn shellers under the provisions of the contract, and in which both the manufacturing company and Kingman & Co. made propositions for compromise or settlement of their differences. Much of this correspondence need not now be specifically referred to. It shows the usual charges and counter charges of defaults and shortcomings. Finally, on December 15, 1893, the manufacturing company, in a letter written by it to Kingman & Co., said: "We will not reinstate the contract allowing you to accept or reject such portions of it as suits your convenience, regardless of the damage and loss we may suffer, nor will we make you any further shipments under it." On December 19, 1893, Kingman & Co. acknowledged the receipt of the last-mentioned letter, and said: "We now understand from your letter that you will not make any further shipments under the old contract, and that you now cancel the contract, which we accept." The manufacturing company acknowledged the receipt of the last-mentioned letter, making no allusion to the foregoing quoted portion thereof.

The record shows that the main controversy at the trial below was over the Peoria interview of November 22d. Plaintiff claimed that it established a breach of the contract by defendant, in this: that defendant then and there announced its final decision to take no more mowers, shellers, or end gates under the contract. The defendant claimed that the evidence did not establish that breach, but, on the contrary, a determination on its part to fully comply with the obliga-

tions imposed upon it by the contract. Substantially all the oral testimony in the case (except that relating to damages) was limited to this issue. The court in its charge practically confined the jury's attention to this issue. It said:

"It is claimed on the part of the plaintiff that the defendant, Kingman & Co., broke the contract on November 22, 1893, at a conversation which was held on that date at Peoria between Mr. Welch, on behalf of the manufacturing company, and Mr. Kingman, representing Kingman & Co. It is claimed on the part of the plaintiff that on that day and date Kingmar & Co. refused to accept or receive any of the articles mentioned in this contract after that date. Of course, if you should find by a fair preponderance of all the testimony that the defendant, Kingman & Co., did on that date refuse wholly thereafter to receive any of the articles—that is, end gates, mowers, or corn shellers—under this contract, and that the plaintiff, the Western Manufacturing Company, acted upon that refusal, and accepted it as a refusal of the contract, then the defendants will be liable for any legal damages which, under the rules of law that I may state to you, they would be entitled to recover. So the principal question in the case is as to whether or not the claim of the plaintiff is true as to the conversation at Peoria on the 22d of November, 1893. If the claim of the defendants as to that conversation is true, then there would be no breach of the contract, and, if you should find that there was no breach of the contract, of course that would end your deliberation. Your verdict then would necessarily have to be for the defendant, without considering the matter of damages at all."

Counsel for plaintiff took no exception to the court's statement of its claims, and no exception to the charge of the court that the principal question in the case was whether the plaintiff's claim with respect to the Peoria interview was true. We are at liberty, therefore, to conclude that the claims of the plaintiff were correctly stated by the court.

The court further instructed the jury that if they should find "that the contract described in the plaintiff's petition was still in force on December 15, 1893, and by a letter dated the 15th of December, 1893, the plaintiff said to the defendant that the plaintiff would not make any further shipments to the defendant under said contract, and that the defendant in answer to said letter wrote the plaintiff that it accepted the plaintiff's said refusal as a cancellation of the contract, then your verdict should be for the defendant." The court explained this last instruction as follows: "That is, if you find that the contract was not broken on the part of the defendant at this conversation occurring in Peoria on the 22d day of November, but that when Mr. Welch left the place the contract still existed, * * * and continued to exist, up to the 15th of December, 1893, when this letter of that day was written," then the writing of that letter by the plaintiff, and the answer thereto by the defendant of date December 19th, "operated as a mutual cancellation of the contract between the parties." Counsel for plaintiff took no exceptions to the portions of the charge hereinbefore last referred to. It thereby accepted the same as the law governing the case; that is, in substance and effect, that if there was no rupture of the contract by the defendant at the Peoria interview, as charged by the plaintiff, the two letters, one written by plaintiff to the defendant of date December 15, and the other written by the defendant to the plaintiff of date December 19,

1893, constituted a rescission of the contract of May 8th by mutual consent of the parties thereto. The whole case, with the exception of the proper effect to be given to the letter of November 18th, already considered, is made to depend upon the issue of fact raised with respect to the Peoria interview between Welch and Kingman. This reduces the case to a very narrow compass, and enables us readily to consider the remaining assignments of error.

The trial court, after stating the issue between the parties and clearly advising the jury of the requisite proof to entitle the plaintiff to recover, as hereinbefore pointed out, gave, at the request of the defendant, the following instructions to the jury:

"(1) You are further instructed that if you find from the evidence that each of the parties to the contract referred to in the plaintiff's petition indicated, in a conversation between the agents of the plaintiff and of the defendant at Peoria in November, 1893, a willingness to perform said contract, then neither party thereto could put the other in default of a performance thereof, without first making upon the other a demand of performance, giving a reasonable time within which to perform, and giving notice that a failure to comply with said demand within a reasonable time after it was made would be deemed a forfeiture of said contract.

"(2) If you find from the evidence that in a conversation between the agents of the plaintiff and of the defendant in November, 1893, each party to said contract expressed a willingness to perform it, and that thereafter the plaintiff without making a demand of performance upon the defendant refused to furnish goods under said contract, your verdict should be for the defendant.

"(3) Even though you should find from the evidence that in the conversation between the agents of the plaintiff and of the defendant at Peoria, on November 22, 1893, the defendant refused to perform the contract referred to in the plaintiff's petition, yet if you further find that the plaintiff did not there and then accept said refusal as a termination or breach of said contract, and that before any action by the plaintiff in regard to the defendant's said refusal the defendant retracted its refusal to perform, and that thereafter stood ready and willing and able to perform said contract until the plaintiff declared to the defendant its intention not to furnish any more goods under said contract, then your verdict should be for the defendant.

"(4) If you should find from the evidence that in the conversation between the plaintiff and the defendant's agents in November, 1893, at Peoria, the defendant expressly refused to perform the contract described in the plaintiff's petition, nevertheless if you further find the plaintiff did not there and then accept said refusal as a breach or termination of the contract, but took time to consider the same, and that before the defendant heard anything further from the plaintiff about said contract the defendant, in good faith, gave the plaintiff additional orders for goods under the contract, the giving of such orders would be evidence of a retraction of its refusal to perform."

No objection is made by counsel for plaintiff to the principles of law laid down in these four instructions. The only criticism is that "these instructions erroneously assume facts proven, contrary to the undisputed written evidence." We are not favored by counsel with any explanation or specification of reasons why they, or either of them, are subject to the criticism made. Notwithstanding that, we have given them critical consideration, in the light of the evidence found in the record.

The first two are substantially a repetition of the principles laid down in the general charge. They declare substantially that, if defendant's version of the Peoria interview was correct,—that is, if

there was not any refusal on its part to perform the contract,—and if plaintiff afterwards, without making any demand of performance by defendant, refused to furnish goods under the contract, the plaintiff cannot recover. There does not appear in these instructions to be any assumption of facts at all, and certainly there is no assumption of facts contrary to the undisputed evidence, and, measuring them by the sole standard of plaintiff's counsel, we find no error on the part of the court in giving them.

The last two of these instructions are predicated upon a finding by the jury of a refusal by the defendant at the time of the Peoria interview to perform its part of the contract in question, and by them the court further instructed the jury that if plaintiff did not accept and treat such refusal as a breach of the contract, but took time to consider the same, and if, in the meantime, before plaintiff had taken any action predicated on the refusal, the defendant retracted its refusal to perform, and in good faith ordered goods under the contract, and was and continued to be ready, willing, and able to perform the same until the plaintiff wrote the letter of December 15th declining to fill further orders, even then plaintiff could not recover. Subjecting these two instructions to the criticism of plaintiff's counsel, and testing them by the standard pointed out by them, we are of opinion that there was no error on the part of the court in giving them.

The testimony of Mr. Welch is to the effect that he and Kingman had considerable negotiation at Peoria after Kingman had, as he claims, declined to take any more goods under the contract. Welch testifies that he proceeded to give Kingman reasons why he should not refuse to take the goods, and that Kingman told him that the plaintiff did not have any end gates, and could not fill the orders for shellers; that the end gates were all burned up in the fire which occurred on the 26th of October. Welch testifies that he told Kingman that his company could fill all orders in a few days after it should get them. Welch also testifies that he then proposed that if Kingman would take the mowers and shellers, and settle for them under the contract, that he would not say anything about the loss on the end gates, and that Kingman could either order them away or place them in storage and take warehouse receipts. He says Kingman then told him that he would settle for what goods they had received under the contract, and that he told Kingman that he did not want to settle for anything at all, and told him that he must decline to do any further business "until he went home and consulted his associates and the president of the company, and decided what to do." It is clear that this testimony tended to show that Welch, acting for the plaintiff, did not accept or treat the refusal by Kingman to take any more goods (which he claims was the outcome of the Peoria interview) as a final breach of the contract, but that propositions pro and con afterwards followed between them, resulting in Welch saying that his company would decline to do any further business with the defendant until he could go home and consult with his associates, and decide what to do.

There is also evidence that the defendant company made orders for goods under this contract very soon after the date of the Peoria interview, and there is no reason which we can discover why these orders were not made in good faith. There is also no showing that any circumstances intervened between the day of the Peoria interview and the giving of further orders by the defendant company by reason of which plaintiff was at all prejudiced or affected. Such being the testimony, we cannot say that these instructions erroneously assume facts proven contrary to the undisputed written evidence. There does not appear to be any assumption of facts at all in the instructions criticised. The conclusion in each is predicated upon the jury's being able to find certain pre-existing facts from the evidence in the case. We think each of the four instructions complained of were based upon certain phases of the testimony in the case, and are not obnoxious to the criticism of plaintiff's counsel.

Plaintiff next complains that the court erred in giving the following instruction to the jury:

"You are further instructed that if you find that while the contract described in plaintiff's petition was still in force, and by a letter dated the 15th day of December, 1893, the plaintiff said to the defendant that the plaintiff would not make any further shipments to the defendant under the contract, and that the defendant in answer to said letter wrote the plaintiff that he accepted the plaintiff's said refusal as a cancellation of the contract, then your verdict should be for the defendant."

The only criticism to this instruction is that there was no evidence upon which it could be predicated.

After a most patient and careful consideration of the evidence found in the record on the issues made by the pleadings and explicitly stated by the court in its charge to the jury, we are unable to see any merit in the objection made to this last instruction. The court in its general charge had explained to the jury what it was necessary for them to find in order to conclude that the contract of May 8, 1893, had been broken. It now, in this instruction, without repeating what it had already told the jury, declares that, if the jury should find that the contract remained in force—that is, had not been broken—in and by the Peoria interview, then the correspondence represented by the letters, already adverted to, of December 15th and December 19th, amounted to a cancellation of the contract by consent of parties. There is not only sufficient evidence to support this instruction, but it was manifestly a correct proposition of law.

The only other assignments of error are those which challenge the verdict on the grounds that it was contrary to the instructions of the court and not supported by any evidence. From what has already been said, it follows that there is no merit in such assignments.

This case has been pending a long while. It was before this court on a first writ of error, and is found reported in 34 C. C. A. 489, and 92 Fed. 486. It has now again received our careful consideration, and we are of opinion that the result reached by the trial court, under the pleadings and pursuant to the principles announced and acquiesced in by both parties at the trial, is substantially correct, and, finding no reversible error, the judgment is affirmed.