PRATT et al. v. AUTO SPRING REPAIRER CO.

(District Court, D. Massachusetts. December 20, 1911.)

1. PATENTS (§ 216*)—NOTICE—CONSTRUCTION.

On the back of an order for certain patented auto spring repairers, the seller printed a "Warning to Trade," advising that its counsel claimed that the seller's patent covered broadly the seller's type of spring repairer, that all spring repairers of this type made by others were infringements, and that the seller had recently brought suit against a certain alleged spring repairer for infringement, and intended to proceed vigorously against all others who made and sold such articles. *Held*, that such notice did not constitute an undertaking to protect the seller's customers against infringement and as a guaranty against infringing competition.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. § 216.*]

2. BANKRUPTCY (§ 322*)—PROVABLE CLAIMS—DAMAGES—LOSS OF PROFITS.

A bankrupt on January 4, 1910, gave to claimant two orders, one for 30 gross of "Only Cotter setters," to be taken 5 gross or more at a time, during 1910, and the other for 2,000 auto spring repairers, to be taken in lots of 50 or more at a time, during the same year. Fifty gross of the setters were shipped, and 100 auto spring repairers, when the bankrupt canceled both contracts, without valid ground for so doing, and refused to receive any more. The materials were manufactured and sold under patents, and it did not appear that, when the orders were repudiated.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claimant had any goods with which to fill the subsequent orders, or had prepared to ship the same. *Held*, that claimant was entitled to prove for the difference between what the articles would have cost to manufacture and deliver and the contract price.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 508–510; Dec. Dig. § 322.*]

In Bankruptcy. In the matter of bankruptcy proceedings against the Percy Ford Company. Proceedings to review a referee's order disallowing a claim of the Auto Spring Repairer Company. Overruled. Claims allowed.

For opinion of the Circuit Court of Appeals, affirming decree, see 196 Fed. 495.

Harvey H. Pratt, for plaintiffs.
Albert P. Carter, for defendant.

DODGE, District Judge. This creditor carried on business in New York City. The bankrupt, doing business in Boston, gave the creditor two orders in writing on January 4, 1910. One was for 30 gross of "Only Cotter setters," to be taken 5 gross or more at a time, during 1910. The other was for 2,000 auto spring repairers, to be taken in lots of 50 or more at a time, during 1910.

The order for "Only Cotter setters" called for 5 gross (720) to be shipped as soon as possible. They were shipped in February, and the bill for them, amounting to $180, was paid in April. Five gross more were shipped in April, and the $180 due for them was paid in installments in July. Five gross more were shipped in July. On account of the $180 due for them, $150 was paid in November and December; and $30 remained due at the time of the bankruptcy, being the amount for which the referee has allowed the creditor's claim.

Fifteen gross more remained to be shipped under the order. They were never shipped, because the bankrupt, in a letter dated October 5, 1910, asked the cancellation of both orders, and gave notice that no more goods consigned by the creditor would be received. It is not claimed that the evidence affords justification for the cancellation of this order. The only questions to be considered are whether the creditor has proved the claim for damages by reason of the repudiation of the order, and, if so, to what amount? At the contract price, $540 would have become due for the remaining 50 gross, if shipped, and they would have cost the creditor $259.22. It contends that the difference of $280.78 should have been allowed it, in addition to the unpaid $30. The questions here raised are further considered below.

The order for the auto spring repairers directed 50 to be shipped immediately. They were shipped in January, and $110 due for them was paid in March. Fifty more were shipped in July, and the same amount paid for them in October. On October 5th, 1,900 remained to be shipped, when the bankrupt sent its notice refusing to receive any more goods. The bankrupt contends that the

creditor so far failed to comply with certain agreements in connection with the order as to justify its repudiation of the contract and refusal to take the remaining 1,900.

[1] The auto spring repairers were manufactured by the creditor under a patent owned by it. On the back of the bankrupt's order for them was printed the following, under the heading "Warning to the Trade":

"Auto Spring Repairers.

"We are advised by our patent counsel that this patent covers broadly our type of spring repairer, now well known to the trade and to the public, and that all spring repairers of this type made by others are infringements upon our patent.

"We have recently brought suit in the United States Circuit Court for the Southern District of New York against the Manhattan Storage Co. and 35% Automobile Supply Co., maker and seller of one infringing spring repairer, and intend to proceed vigorously against all others who make or sell infringing articles.                    Auto Spring Repairer Company."

The referee has construed this notice as an undertaking by the creditor to protect its customers against infringers and as a guaranty against infringing competition. I am unable so to regard it. It seems to me to do no more than announce to the public the creditor's claim that other spring repairers infringed its patent and its intention to proceed with vigor against all who should make or sell them. I am unable to see in the notice any guaranty against such infringement as might continue notwithstanding the litigation threatened, nor does the evidence seem to me to warrant a finding either that the creditor had no intention of prosecuting infringers with vigor or failed to do so. Nor do I find sufficient reason in the evidence for the conclusion that any such failure on the creditor's part was the real cause of its attempted cancellation of the order. After endeavoring in vain in several letters to persuade the creditor to cancel, because it had found itself unable to pay for or sell more of the goods ordered, it seems to me to have repudiated the order on October 5th as a last resort, without any very distinct statement of the reasons whereon it relied.

Four thousand one hundred and eighty dollars would have been due at the contract price for the 1,900 spring repairers not shipped, and to have shipped them would have cost the creditor $872.30. The difference of $3,307.70 is claimed as damages.

The creditor did not itself manufacture the spring repairers. It bought from others the various parts constituting them, and assembled them in its own place of business for shipment. It never did actually make up ready for shipment the whole quantity of 1,900. A very much smaller quantity was all it had on hand when the bankrupt refused to take any more. All these it sold to other parties, and at no reduction, so far as appears, from the price agreed on with the bankrupt. The same facts are true as to the 15 gross of "Only Cotter setters" which it expected the bankrupt to take. Its claim for damages, therefore, is a mere claim for the profit it would have made, if permitted to fill both orders in full.

199 F.—28

The referee has held that the claim for these anticipated profits is too remote and speculative, and for that reason has declined to allow them as damages.

In Hinckley v. Pittsburg Steel Co., 121 U. S. 264, 275, 7 Sup. Ct. 875, 879 (30 L. Ed. 967), the facts were very similar to those here involved. The plaintiff was allowed to recover the difference between the contract price and the cost of making and delivering the goods contracted for. It is said:

"Wherever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market, are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost."

[2] It cannot be said in this case that the seller's profits under the contract were not within the intent of the parties when they agreed. The bankrupt cannot have supposed its orders were to be filled without profit to the creditor. On the contrary, it knew that the creditor claimed the exclusive right to sell them, and was presumably expecting to derive the benefit of its monopoly from filling orders like these. The general rule as to the seller's damages under circumstances like these, when the buyer has broken a contract for goods to be furnished at an agreed price, is thus stated by the Court of Appeals for the Eighth Circuit, in Kingman v. Western Mfg. Co., 92 Fed. 486, 490, 34 C. C. A. 489, 493:

"The measure of damages upon articles covered by such a contract for which no materials had been bought and upon which no work had been expended at the time of the breach, is the difference between the amount it would cost the manufacturer to make and deliver them and the contract price, if that price is greater than the cost."

I am unable to see anything in the facts of this case sufficient to remove it from the operation of this rule. It does not appear that, when the bankrupt repudiated the orders it had given, there were any goods in the creditor's hands which had been specifically devoted to filling these orders and prepared for shipment under them. Had it so appeared, the market value of such articles might have to be taken into account. The definite refusal of the bankrupt to receive any more of the goods made it unnecessary for the creditor to ship, or offer to ship, before the end of 1910, all the goods not previously shipped under the orders before it could claim damages.

I am obliged to hold, on the facts presented, that the creditor has established its right to the allowance of the profits referred to as part of its claim. See the cases above cited; also River Spinning Co. v. Atlantic Mills (C. C.) 155 Fed. 466, decided in this circuit in 1907; Jackson v. Washington, etc., Co., 35 App. D. C. 41 (1910). The referee's order disallowing this part of the claim is, therefore, overruled. The total amount for which the claim is to be allowed will include the $30 unpaid for goods delivered, and also the profit upon the goods remaining to be shipped under both orders, in all $3,618.48.