## SOLOMON v. WATERBURY BRASS GOODS CORPORATION.

(Circuit Court of Appeals, Second Circuit. March 9, 1925.)

No. 111.

1. **Sales** ⬤➡179(3)—Acceptance is waiver of delay in delivery.

In action by seller against buyer, which had canceled the contract as to future deliveries to be made, an instruction *held* correct that, whether the contract fixed a definite time for deliveries or whether the rule as to reasonable time governed, acceptance of part of the goods after expiration of that time was a waiver of the delay, and time ceased to be of the essence of the contract, unless notice was given that it would be insisted on as to future deliveries.

2. **Guaranty** ⬤➡27, 53(1)—Guarantor not liable beyond strict terms of his contract, and material change in principal's obligation discharges guarantor.

A guarantor cannot be held liable beyond the strict terms of his contract, and as a general rule any material change in the obligation of the principal, if made without the consent of the guarantor, releases him from liability thereon.

3. **Guaranty** ⬤➡53(1)—General guaranty of all contracts made by principal during its term held not avoided by changes made in such contracts.

A guaranty of prompt payment for all goods bought by a principal and prompt performance

of all contracts made by it, until notice to the contrary by the guarantor, was not avoided by any changes made in such contracts during the term.

**4. Guaranty ⬅⟶56—Guarantor held not released by extensions of time to principal.**

Under a provision of a guaranty that in no case were bills of the principal to remain unpaid longer than 90 days but which expressly waived notice of extensions of credit and notice of nonpayment, and assented to the "extension of any obligation owing by said company to you," failure to collect bills within 90 days or give notice of their nonpayment did not release the guarantor from liability.

**5. Sales ⬅⟶384(6)—Measure of damages for breach of contract by buyer, wrongfully refusing to accept goods, stated.**

As to goods which a seller had completely manufactured under the contract, but which the buyer wrongfully refused to accept, the seller is entitled to recover the difference between the market value of the goods and the contract price.

**6. Sales ⬅⟶384(6)—Measure of damages for breach of contract by buyer as to goods in process of manufacture stated.**

As to goods in process of manufacture by the seller under the contract at the time it was wrongfully canceled by the buyer, the measure of damages is the cost of the goods, so far as manufactured, plus the profit the manufacturer would have made if the contract had been complied with, less the value of the goods in the process of manufacture.

**7. Sales ⬅⟶384(6)—Measure of seller's damages as to goods not manufactured, when contract was canceled by buyer, is loss of profits.**

When a seller is notified of cancellation of contract by buyer, it had no right to begin to manufacture any of the articles included therein, and the measure of its damages as to such articles is the profit it would have made on them, had the contract been carried out.

**8. Trial ⬅⟶340(5)—Amendment of verdict by court by adding interest held proper.**

Where the verdict of the jury was for a stated amount, "with whatever interest the plaintiff is entitled to," and there was no uncertainty as to the date of breach of the contract, it was within the power of the court, on motion during the term, to amend the verdict by adding interest from that date.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Waterbury Brass Goods Corporation against August Solomon. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error was the plaintiff below and is hereinafter referred to as plaintiff, and the plaintiff in error, who was defendant below, is hereinafter referred to as

defendant. The plaintiff obtained a judgment entered on a jury's verdict for the sum of $12,733, which was afterwards amended by the allowance of interest thereon in the sum of $1,845.24, making the aggregate amount $14,578.27.

The plaintiff is a corporation organized under the laws of the state of Connecticut, with its principal place of business in the city of Waterbury, in said state. It is a manufacturer of brass articles, as its name indicates. The defendant is a citizen of the state of New York and a resident of the Southern district of New York. The Electric Case Company, which was in business in the borough of Brooklyn in the city of New York, was an assembler and distributor of electric flash lights. The facts appear in the opinion.

Leo Oppenheimer, of New York City (Samuel H. Kaufman, of New York City, John J. McGinty, of Utica, N. Y., and Theodore J. Miller, of New York City, of counsel), for plaintiff in error.

Sullivan & Cromwell, of New York City (E. H. Sykes, of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The action is brought on a written instrument of guaranty whereby the defendant guaranteed to the plaintiff the punctual payment by the Electric Case Company, Inc., for all goods, not exceeding $25,000, sold and delivered by the plaintiff to the Electric Case Company, and further guaranteed the full performance by the latter of all and any contracts entered into between the plaintiff and the latter company. The written guaranty was dated December 29, 1919.

The plaintiff alleged in its complaint that thereafter, and on the faith of the guaranty, it entered into certain agreements with the Electric Case Company, under which it sold and delivered to the latter certain goods and wares and merchandise at the prices agreed upon, for which it has never received payment although payment was demanded. It also alleged that on December 22, 1920, there remained to be delivered by the plaintiff to the Electric Company, under their agreements, goods of the contract price of $11,-214.61; and on that day the Electric Company canceled its agreements, so far as applicable to the goods which remained to be delivered and to be received and paid for by it.

It was practically conceded upon the trial, and admitted upon the argument in this court, that when the contracts were repudiated there had been delivered merchandise of the contract price of $4,951.89, for which payment had not been made; that there was on hand and undelivered completed merchandise of the contract price of $8,473.75, and merchandise in process of manufacture of a contract price of $2,636.89. The contracts entered into between the plaintiff and the Electric Case Company were for the sale and delivery of certain quantities of flashlight parts, which parts the latter company assembled into completed flash-light units.

The Electric Case Company contends that it was to receive the flash-light parts, so as to make complete sets or units, inasmuch as receiving some of the parts at one time would be of no use to it, if it were compelled to wait for a considerable period for the other parts to complete the set or unit—its sole business being the assembling of electric flash lights. It contends that, unless and until all the parts of a unit were delivered, the goods were of no use whatsoever. The court charged the jury that there was no evidence that the plaintiff was bound to furnish the goods ordered by the Electric Case Company in sets, but it at the same time instructed them that they should take into consideration the evidence which was given in passing upon whether delivery was tendered within a reasonable time. There certainly was no error in this. The form of each of the orders corresponds to the one found in the margin.[1] It contained nothing as to units and nothing as to the time when delivery was to be made. The court submitted to the jury the question whether there was an intention to deliver in complete sets; and while there was no evidence of any agreement to furnish the parts in balanced quantities, and no reason for sending that question to the jury, he nevertheless was asked by counsel for the defendant to instruct that the evidence "shows that the delivery was to be made in complete units." This the court refused. Thereupon the counsel requested the court to charge that, "in determining whether it was intended to deliver the parts in complete sets was in balanced stocks, they are to take into consideration the action of the parties, the correspondence that passed between the various

[1] "Please enter our order for

| | |
|---|---|
| 40,000 nickle and polished bottom caps | 14.25 M |
| 20,000 nickle and polished lense rings | 14.10 M |
| 40,000 reflectors brass | 9.85 M |

and charge to account of
　"Electric Case Company, per J. W. V."

parties and the various parties representing the plaintiff in this action," and the court so charged. As the court submitted that question to the jury upon the request of the counsel for the defendant, and the jury answered it in the plaintiff's favor, the defendant would seem to be concluded thereby.

[1] No time for delivery was specified in the orders. The jury was therefore properly instructed that, where the parties to a contract have fixed no specific date for the delivery of the merchandise, the law requires that delivery shall take place within a reasonable time. The court added:

"The court further charges the jury that, even if there were a definite time mentioned in the contract for the delivery of goods, or if the contract provided, by operation of law, that goods must be delivered within a reasonable time, the purchaser may waive the definite date or the reasonable time, and if he once does waive that reasonable time, or that definite date, the time of the delivery ceases to be of the essence of that agreement.

"The court also charges you that if, after a reasonable time has expired, or a definite date for delivery has expired, the purchaser receives and accepts goods, he necessarily—and I think that comports with common sense—has waived delay in delivery, whether the delivery should have been within a reasonable time or on a definite day. The receipt of a part of the goods after such time is a waiver of such provision.

"The court further charges you that where the time for the delivery, whether it be a definite day or a reasonable time, has once been waived, the time ceases to be of the essence of the contract, but the purchaser can make time of delivery of the essence again by giving notice that, unless the contract is complied with within a reasonable time after that notice, then the contract will be canceled. That, in a general way, is the law applicable to this case.

"It follows, therefore, that if, under all the circumstances of this case, you find that the plaintiff has made a delivery, or was ready to make a delivery within a reasonable time, then your verdict must be for the plaintiff."

The charge on the subject of the time within which delivery had to be made was not only correct, but was not excepted to by the defendant, and we do not deem it necessary under the circumstances to comment upon it.

This brings us to the question of damages. The evidence shows that there is no dispute as to the right to recover for the goods sold and delivered, and for which payment has

not been made. The controversy is whether the plaintiff is entitled to recover for the completed goods which it has on hand and has not delivered, and for the uncompleted goods, and, if so, as to the measure of the damages to which it is entitled.

It is claimed on behalf of the defendant appellant that the guarantor was released from any liability on his contract of guaranty (1) by modification of the contracts of purchase and manufacture; and (2) by the plaintiff permitting the bills to remain unpaid longer than 90 days. We will consider these contentions in their order.

It is said that change was made in an order given on December 9, 1919, and in an order given on January 6, 1920. The changes made are shown by a letter written by the plaintiff to the defendant on February 21, 1920, in which the price was changed, and also, instead of being "like sample," the articles were to be made of one piece, instead of two, and certain other changes were made, which it is not necessary to consider.

[2] We do not question that a guarantor cannot be held liable beyond the strict terms of his contract. A guaranty is strictissimi juris. It is undoubted that as a general rule any material change in the obligation or duty of the principal, if made without the consent of the guarantor, releases him from liability thereon. Mann v. Mt. Union Tanning, etc., Co. (D. C.) 267 F. 448; Holcomb v. People's Trust Co., 205 F. 491, 123 C. C. A. 559; Sagal v. Mann, 89 Conn. 576, 95 A. 6; Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207; Page v. Krekey, 137 N. Y. 314, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731.

[3] But this rule is without application to the facts of this case. The contract of guaranty into which the guarantor entered provides that:

"The undersigned hereby guarantees to you, your successors and assigns, the prompt and punctual payment by the Electric Case Company of the purchase price of all goods, wares, and merchandise sold by you to said company, and the due and punctual performance by said company of all and any contracts entered into with you. The undersigned hereby waives notice of the making of any sales or contracts with the said company, or the extension of credit to said company, and the undersigned further waives demand upon the said debtor for payment and notice of nonpayment. The undersigned assents to the extension of any obligation owing by said company to you, and agrees that the un-

6 F.(2d)—63

dersigned will remain bound upon this guaranty notwithstanding any such extension.

"In the event of bills not being paid at maturity, same are to bear legal interest, and in no case are bills to remain unpaid longer than 90 days.

"This guaranty shall remain in full force and effect until you receive notice in writing from the undersigned to the contrary, but the undersigned shall continue liable under this guaranty under all circumstances for all goods sold or contracted to be sold or credit extended prior to the actual receipt by you of such written notice."

This guaranty did not relate to a particular contract or contracts, but included any agreements which might be entered into thereafter between the plaintiff and the Electric Case Company until the plaintiff was notified in writing by the defendant that he would not be responsible on contracts thereafter made. There is no possible reason for contending that the guaranty was voided by changes made in the contracts within the period covered by the guaranty. Delaware, L. & W. R. R. Co. v. Burkard, 114 N. Y. 197, 21 N. E. 156.

[4] But the great stress was laid at the argument upon that clause in the contract of guaranty which stated that in "no case are bills to remain unpaid longer than 90 days." As respects that provision it is urged that it must be construed as requiring the seller to give notice to the guarantor if the buyer failed to pay for the goods within 90 days; and the court was asked to instruct that, "if the jury find that the plaintiff extended the time of the payment of the bills due from the Electric Case Company for a period exceeding 90 days, that the jury must find a verdict in favor of the defendant." This instruction the court refused to give, and instead charged "that the guaranty itself provides that the plaintiff may give extensions of credit without further notice to the defendant." The instruction as given was clearly right. The defendant in his contract of guaranty expressly waived notice of "the extension of credit," and of "notice of nonpayment," and assented "to the extension of any obligation owing by said company to you," and agreed that he "will remain bound upon this guaranty notwithstanding any such extension." We think it plain that what was intended and agreed was that interest was to run upon the bills and that the plaintiff should not be asked to wait more than 90 days for its pay.

Then it is contended that the measure of damages was erroneously presented to the

jury. The jury was instructed on this subject as follows:

"For such goods as had been actually delivered, the plaintiff is entitled to the contract price. For such goods as had been completed, but not delivered, the plaintiff would be entitled to the difference between the contract price and the value of those goods.

"When the plaintiff received notice of cancellation of the order, he was not authorized to put the defendant to any greater damage, and it was his duty to stop manufacturing. As to the goods in the process of manufacture, the measure of damages is the cost of the goods, so far as manufactured, to the plaintiff, plus the profit he would have made if the contract had been complied with, less the value of the goods in the process of manufacture. * * *

"There is evidence on the part of the plaintiff that the contract price of the goods in the possession of the plaintiff completely manufactured, but not delivered to the Electric Case Company at the time of the cancellation, amounted to $7,103.91. The plaintiff's witnesses testified that the goods which were completed, but not delivered, had no market value, that they had no value to anybody, and that their only value consisted of scrap, and that the value depended upon the number of pounds of scrap, and the value according to the plaintiff's witnesses of those goods on hand, but not delivered, was $371.69. Deducting that from the contract price would give the difference between the contract price and the value at the time of the cancellation as $6,732.22."

The counsel for the defendant at the conclusion of the charge said:

"I except to your honor's charge to the jury on the question of market value, and except generally to the instructions given to the jury on the question of market value. I request the court to charge the jury that if they find that the plaintiff is entitled to recover, and they further find that the parts had a market value on the 22d of December, that they must find a verdict for damages for the plaintiff in the amount of 6 cents on the undelivered portion of the merchandise."

The court thereupon said:

"Gentlemen, if you come to the conclusion that there was a market for unfinished parts, or for the parts which were in the process of being manufactured by the plaintiff, or for the finished parts not delivered, then, there being no evidence of the market value, and the plaintiff being under a duty to give credit for the market value, you cannot give plaintiff any damage for the goods in the process of manufacture, or the goods which they had in their possession, but not delivered, because there would not be proof of proper measure of damages. This does not apply if you find that there was no market value for the parts."

He added:

"That, if the jury finds that there is a market value, it was the duty of this plaintiff to prove a market value. Not having done so, you cannot give him any damages, because he has not proved the proper measure of damages with reference to the goods on hand and not delivered, and the goods in process of manufacture. But this last suggestion I am making does not apply in case you find that there was no market value for goods of that description."

We are satisfied that the charge on the subject of damages was correct.

1. It is perfectly clear that as to the goods actually delivered the plaintiff was entitled to the contract price.

[5] 2. And it is equally clear that as to the goods which the plaintiff had completely manufactured, but not delivered, it was entitled to recover the difference between the market value of the goods and the contract price. W. H. Edgar & Son v. Grocers' Wholesale Co. (C. C. A.) 298 F. 878, 883; Wood v. Brighton Mills (C. C. A.) 297 F. 594, 601; W. R. Grace & Co. v. Nagle (C. C. A.) 275 F. 343, 345; Curtis v. Walpole Tire & Rubber Co. (D. C.) 227 F. 698, 700; Manhattan City & Interurban Ry. Co. v. General Electric Co., 226 F. 173, 174, 141 C. C. A. 171; River Spinning Co. v. Atlantic Mills (C. C.) 155 F. 466, 473; Kingman & Co. v. Western Mfg. Co., 92 F. 486, 34 C. C. A. 489.

[6] 3. As to goods in the process of manufacture the measure of damages is the cost of the goods, so far as manufactured, plus the profit the manufacturer would have made, if the contract had been complied with, less the value of the goods in the process of manufacture. Southern Cotton Oil Co. v. Heflin, 99 F. 339, 39 C. C. A. 546; Mechem on Sales, vol. 2, § 1701.

[7] 4. When the plaintiff was notified of the cancellation of the order, it had no right to begin to manufacture any of the articles included in the order. Its measure of damages as to such articles was the profit it would have made upon them, if it had performed the contract. Kingman & Co. v. Western Mfg. Co., 92 F. 486, 488, 34 C. C. A. 489; Williston on Contracts, vol. 3, §§ 1298, 1299. Mr. Williston's statement is:

"Where nothing has been done, it will almost always be the proper course for the seller to refrain from doing anything, and the measure of his damages will be simply the profit he would have derived had the contract been carried out." The general rule in such cases is the difference between the cost of doing the work and the price to be paid for it. Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 275, 7 S. Ct. 875, 30 L. Ed. 967; Philadelphia W. & B. R. Co. v. Howard, 13 How.. 307, 14 L. Ed. 157; United States v. Speed, 8 Wall. 77, 88, 19 L. Ed. 449; Pittsburgh Bessemer Steel Rail Co. v. Hinckley (C. C.) 17 F. 584.

[8] It is also contended that in any event the judgment must be modified by deducting therefrom the sum of $1,845.13 allowed as interest. The jury's verdict, which was rendered on October 18, 1923, was for the plaintiff in the sum of $10,854.34, "with whatever interest the plaintiff is lawfully entitled to." Thereafter a motion was made to correct and amend the verdict, and on November 3, 1924, the court entered an order amending the verdict in the sum of $1,845.24, that being interest on the sum of $10,854.23.

In support of its contention counsel relies upon Schnaufer v. Ahr, 53 Misc. Rep. 299, 103 N. Y. S. 195. The case was decided at the Appellate Term of the Supreme Court of New York. The jury according to the stenographer's minutes was "for $1,432.09 with interest," but the verdict as recorded was for $1,432.09 without any mention of interest. About two weeks after the trial and before entry of judgment, the court, upon motion, granted an order "that the verdict rendered as $1,432.09 in favor of the plaintiff be and the same is hereby amended, so as to have added thereto interest from the 1st day of January, 1905." Thereafter the interest was computed to amount to $150.56, and judgment was entered against the defendant for $1,582.65. The Appellate Division thought this was error, and modified the judgment by deducting therefrom the amount allowed as interest. The court said:

" * * * The court, as we have seen, granted an order amending the verdict, as recorded, by adding interest in the sum of $150.56. It has been held that, even though the jury is discharged, the court has the power to correct the verdict so as to make it conform to the real determination of the jury, if the motion is made at the term of the court at which the verdict was rendered. [Hodgkins v. Mead] 119 N. Y. 166 [23 N. E. 559]. That doctrine, however, does not apply here; for it is not evident that the real determination of the jury was to add $150.56 interest to the amount allowed to the plaintiff. Even assuming that they intended to allow some interest on the claim, the date from which interest would have been allowed, and consequently the amount of such interest, are not clearly shown."

But that case in its circumstances differs materially from the instant case. In this case the jury has left nothing to uncertainty. It gave its verdict for the amount specified therein, "with whatever interest the plaintiff is lawfully entitled to." The amount upon which the interest was to be computed was fixed and certain. The act which constituted the breach and the date on which it occurred are not in dispute, and all that remained was a mere matter of mathematical calculation. As the jury had awarded interest, the plaintiff was lawfully entitled to interest from the time of default, and it is undisputed that default occurred on December 22, 1920, when notice was given by defendant that it could not use the goods. Nothing was left to uncertainty. And there is no suggestion that any mistake was made in the computation of the interest. Under the circumstances it is not open to question that there being no uncertainty as to the amount involved the court had power to amend the verdict; the amendment having been made during the term at which the verdict was rendered. American Lumber & Mfg. Co. v. Atlantic Mill & Lumber Co. (C. C. A.) 290 F. 632; Miller v. Steele, 153 F. 714, 82 C. C. A. 572; New Orleans, etc., R. Co. v. Schneider, 60 F. 210, 8 C. C. A. 571.

As we find no errors in the record, judgment is affirmed.