(32 Misc. Rep. 567.)

## BECK v. CATHOLIC UNIVERSITY et al.

(Supreme Court, Special Term, New York County.   October, 1900.)

1. MECHANICS' LIENS—EXECUTORY CONTRACTS—EFFECT OF FORFEITURE OF CON-
TRACT.
   Where lands are sold under an executory contract which provides that
   that agreement may be avoided on the failure of the vendee to make cer-
   tain payments, and the vendee has a building erected thereon with the
   consent of the vendor, and the contract of sale is forfeited, the contractor
   erecting the building is entitled to a mechanic's lien on the property.

2. CONTRACTS—MISTAKES OF CONTRACTOR—COMPENSATION.
   Where a contractor in the erection of a building makes mistakes, which
   the owner is required to remedy by the building department of the city,
   the expense thereof is to be deducted from the agreed compensation ex-
   pressed in the contract.

Original action by Louis C. Beck against the Catholic University
and others to enforce a mechanic's lien.   Judgment for plaintiff.

Cannon & Cannon, for plaintiff.

James, Schell & Elkus, for defendant Catholic University.

Louis S. Phillips, for defendants Mackay & Smith.

William L. O'Neill, for defendant Hamilton.

FITZGERALD, J.   This is an action for the foreclosure of me-
chanics' liens filed against the property of the Catholic University.
By an agreement dated June 1, 1897, the Catholic University, by its
president, agreed to sell to Augustus C. Dexter certain lots on the
east side of Riverside avenue, 450 feet north of 122d street, 75 by
200, for the sum of $100,000 (subject to a mortgage for $50,000),
payable as follows:   $500 cash on June 5, 1897; $1,000 cash on Sep-
tember 1, 1897; $2,000 cash on December 1, 1897, on which last-
mentioned day the deed to be delivered, and the balance, $46,500,
paid by the said vendee executing and delivering to said vendor his
bond for the sum of $46,500, secured by a second mortgage.   The
agreement further provided that:

"In the event of default in the payment of any other sum due the vendor,
and payable on or before December 1, 1897, within ten days after notice from
the vendor by registered letter to the vendee, at No. 1125 Madison avenue,
New York City, that the said payment has become due, this contract is to be
null and void, and the payments theretofore made, either to the vendor or on
his behalf, are to be deemed as liquidated damages."

This contract contained the following paragraph:

"It is further understood and agreed that the vendee shall have the right of
immediate possession to the property hereinbefore mentioned and described,
for the purpose of erecting buildings thereon."

On May 27, 1897, Louis C. Beck agreed to erect for Augustus C.
Dexter a building on the premises described above according to
plans and specifications drawn by John A. Hamilton, and to furnish
the labor and materials necessary for the erection of said building
and fitting up the same, and all work incidental thereto, for the
market value of the labor and materials at the time of the furnish-
ing thereof, plus 15 per cent.; the said building to be ready for
occupancy on or before July 1, 1897.   It thus appears that by the

67 N.Y.S.—20

agreement dated June 1, 1897, Augustus C. Dexter was to have the right of immediate possession of the property for the purpose of erecting a building thereon, that he at once entered into a contract for the erection of such building, and that this building was completed about August 18, 1897. Between June 1 and September 1, 1897, vendee paid the university the sum of $1,500, and the additional sum of $388.89 for interest due on the first mortgage on the property, but failed to pay the sum of $2,000 due December 1, 1897, and thereupon the contract of sale became null and void. The university retook possession of the land, with the building erected thereon. The value of the building is estimated by defendants' witnesses at $10,000, and by plaintiff's witnesses at $14,000, respectively. The rental value is not less than $2,500 per annum.

The facts set forth bring this case clearly within the decision of Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251, where it was held by O'Brien, J., at page 193, 125 N. Y., page 253, 26 N. E.:

"It was the design and purpose of the statute to charge the land with debts contracted in improving it by the erection of buildings thereon, in case the owner consented or permitted the work to be done, although under an agreement made with the vendee under an executory contract. In case the agreement of sale should be surrendered or forfeited, the value of the owner's interest would be enhanced by the accessions to the land; and it would be manifestly unjust to permit the owners to enjoy those benefits without liability for any part of the labor or material which produced them."

This doctrine has been steadily followed and reaffirmed as late as the case of Paper Co. v. Sire, 163 N. Y. 130, 57 N. E. 293.

The vendor consented to the erection of a building by the vendee. The structure erected cannot be claimed to be other than such as was reasonably in contemplation of the parties at the time of the execution of the contract of sale, and is in many respects similar in character to a building upon adjacent land. Defendant is now, and has been for some time, in the enjoyment of rentals derived therefrom; and in this and other respects the case is easily distinguishable from Vosseller v. Slater, 25 App. Div. 368, 372, 49 N. Y. Supp. 478, cited on defendant university's brief.

The second question presented is as to the market value of the labor and materials furnished in the erection of this building. The mason work was done by the plaintiff, and he also furnished the materials and supplied the labor for the painting of the building. The carpenter work, iron work, and plumbing work were given to contractors, who, according to the testimony, furnished the lowest estimates. Plaintiff's expert, Carlin, testified that the cost of laying 1,000 brick on this building was $17. This estimate included the cost of brick, labor, and all other material incidental to the laying of this number of brick. In arriving at this conclusion, he places the price of brick at $7 per 1,000. From Exhibit 17 (the bill of James Rogers), it appears that the cost of brick was $5.50 per 1,000. Taking Carlin's estimate of $10 for labor and materials necessary to lay 1,000 brick, and the actual cost of the brick, I find $15.50 to be the fair and reasonable value for laying 1,000 brick, or, for 265,000, $4,107.50 as against $5,289.30, the amount claimed by plaintiff; the difference being $1,181.80. Plaintiff claims $1,-

011.75 for materials and labor furnished for the painting of the building. There is no testimony as to the number of men engaged in the work, or the number of days they were so employed. Plaintiff's expert, Carlin, fixes the reasonable value of the work, including labor and materials, at $800,—a difference of $211.75. Owing to the mistakes of plaintiff or his agent, certain changes were made in the building, made necessary by the order of the department of. buildings, which added to the cost of the building the sum of $201.34. There should therefore be deducted from the amount claimed by plaintiff ($13,886.09) the sum of $1,594.89, made up as follows:

| | |
|---|---:|
| Reduction on the cost of laying brick | $ 1,181 80 |
| Reduction on the cost of painting | 211 75 |
| Reduction for certain changes in the building | 201 34 |
| | $ 1,594 89 |
| Making plaintiff's claim | $12,291 20 |
| Add 10 per cent. for plaintiff's services, which sum he agreed to accept in lieu of amount fixed by contract | 1,229 12 |
| Making a total of | $13,520 32 |
| Deduct amount paid | 5,500 00 |
| Amount due plaintiff | $ 9,020 32 |

I find there is due the plaintiff $9,020.32, with interest and costs; due John A. Hamilton, $614.56, with interest and costs; due Mackay & Smith, $785, with interest and costs. Judgment accordingly.