(53 Misc. Rep. 299)

## SCHNAUFER v. AHR.

(Supreme Court, Appellate Term. March 14, 1907.)

1. FRAUDS, STATUTE OF—DEBT OF ANOTHER.

　　Where defendant, who was the owner of certain premises, promised that, if plaintiff would refrain from filing a lien thereon for materials delivered to a contractor and would continue to furnish sand for the buildings being erected, defendant would pay the debt owing by the contractor to plaintiff, defendant's agreement was an original promise based on a new consideration, and was not, therefore, within the statute of frauds.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, §§ 50–53, 56.]

2. MECHANICS' LIENS—IMPROVEMENTS BY VENDEE—CONSENT OF VENDOR.

　　Laws 1897, p. 516, c. 418, § 3, declares that a contractor, subcontractor, laborer, or materialman who performs labor or furnishes material for the improvement of any real property "with the consent" or at the request of the owner thereof, or his agent, contractor, or subcontractor, shall have a lien, etc. Held that, where a vendor under an executory contract of sale consents that the vendee may erect permanent structures thereon, lienors who have rendered services or furnished material may,

after the vendee's default, enforce their liens against the premises to the extent of the market value of the labor done and material furnished.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, § 81.]

3. SAME—OWNER.

A person who has contracted to sell real estate remains "the owner," within such act, until title passes.

4. TRIAL—VERDICT—CORRECTION—JURISDICTION.

The court, though the jury has been discharged, has power to correct the verdict, so as to make it conform to the real determination of the jury, if the motion is made at the same term.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 795–801.]

5. SAME.

In an action against the owner of certain property to recover a debt due to plaintiff by a contractor for the erection of certain buildings thereon, the jury returned a verdict for $1,432.09, with interest. The verdict as recorded contained no mention of interest, after which, but before the entry of judgment, the court granted an order amending the verdict by adding interest from January 1, 1905, which was subsequently calculated in defendant's absence at $150.56. *Held* that, there being nothing to show from what time the jury intended to allow interest, the addition of such amount to the verdict returned was erroneous.

Appeal from City Court of New York, Trial Term.

Action by Fred Schnaufer against Henry Ahr. A judgment for $1,667.85 was entered in favor of plaintiff on a verdict, and on plaintiff's motion the verdict was amended by adding interest. From the order amending the verdict, and from an order denying defendant's motion to set aside the verdict and for a new trial on the minutes, he appeals. Modified and affirmed.

Argued before GILDERSLEEVE, P. J., and DAVIS and HENDRICK, JJ.

Stuart G. Gibboney, for appellant.
John Oscar Ball for respondent.

GILDERSLEEVE, P. J. In December, 1899, one Nikisch, who had begun work on certain premises, northwest corner of Brook avenue and 169th street, the Bronx, failed and abandoned said premises. Plaintiff had furnished certain sand, stone, and team hire on the premises, for which he claimed Nikisch owed him $1,432.09. Plaintiff alleges that they were furnished with the knowledge and acquiescence of defendant, which is denied by defendant. Certain contractors filed mechanic's liens, and plaintiff states that he was preparing to do the same, when defendant, it is alleged, requested him not to do so, and agreed that, if the lien were withheld, he (defendant) would pay the Nikisch claim, on the further condition that plaintiff would furnish the sand necessary to complete the buildings. To this, plaintiff says, he assented; whereas, defendant says that it was a gratuity on his part, as he only wanted to offer plaintiff an opportunity to make up for his loss on the Nikisch contract. The amount of the Nikisch claim was $1,432.09, and the price of sand $2.50 a load. The amount for the sand furnished defendant to complete was $700, and the price of sand $2.50 per load; the same as the Nikisch contract. Defendant was the owner of the lot on the northwest corner of Brook avenue and 169th

street, the Bronx, with the length running along 169th street. The houses were built facing 169th street, and the foundations were necessarily for the most part on the lot owned by the defendant. The lot behind, upon which the houses would rest in the rear, was owned by one Schmitt, but afterward purchased by defendant. Nikisch never owned any of the land. He seems to have had a contract of sale with defendant, and paid him $100 down, and then proceeded to build. All the foundation stone and sand were furnished by plaintiff. Plaintiff says defendant supplied the anchors of iron which went into the foundation walls. Defendant denies that he did so. Plaintiff and his witnesses say that the amount of stone was ascertained by the foreman of the masons, Foliana, in the presence of said Foliana, plaintiff's superintendent, Martin, and the contractor, Nikisch, and that the figures so made were assented to, and the original memorandum of the amounts was used by plaintiff in making up his bill for stone. The sand account was made from tickets. Plaintiff, as we have seen, says that he had taken measures to imitate the others who had claims against Nikisch by filing a mechanic's lien, and stated to defendant the amount of plaintiff's claim, and that at defendant's request, and on his promise to pay the claim when he had completed the buildings and sold them, if plaintiff would forbear filing his lien and agree to furnish the rest of the sand for the buildings, plaintiff forbore filing the lien, and in due course furnished the sand to defendant. The latter was paid for in a note and cash, but the main claim of $1,432.09 was refused, although defendant sold the houses in 1904, as claimed by plaintiff, who says he saw "the transfer in the paper." The said transfer is not denied by defendant. There is no dispute as to ownership in the fronting property on 169th street in defendant, or that he afterward bought the Schmitt rear lot and completed the buildings, partly with plaintiff's sand and on the foundations built with plaintiff's stone and sand. Foliana, the mason, and Miller, the plaster man, put liens on the property, and were paid by defendant. The Schmitt property was taken over by defendant subject to the Miller lien.

The issues were submitted to the jury in a charge to which no exception was taken, and the jury gave a verdict for the full amount claimed by plaintiff. At the close of plaintiff's case, and again at the close of the whole case, the defendant moved to dismiss the complaint on the following grounds: (1) That the promise, if made, was to pay the debt of another, and is void under the statute of frauds, as not being in writing. (2) No promise has been proven to pay any specific sum in consideration of no lien being filed. (3) That, if any promise was made, it was to pay the amount of Nikisch's indebtedness, and there is no proof as to what the amount of the indebtedness was. The motion was denied, and exception duly taken. The court, in substance, charged the jury that as any promise, if made, was not in writing, there was no obligation upon defendant, unless he made a direct promise on a consideration moving to himself; that in this case such consideration was claimed to be plaintiff's right to file a lien on defendant's premises; and consequently, if defendant had promised to pay plaintiff for the materials delivered to Nikisch if plaintiff did not file a lien, the jury must be satisfied that the plaintiff had a right to file a lien upon

the defendant's premises, in order that there should be a consideration for defendant's alleged promise. Neither side took any exception to the charge, as we have already stated. The jury returned a verdict for the plaintiff, according to stenographer's minutes, for "$1,432.09, with interest"; but the verdict as recorded was for $1,432.09, without any mention of interest. About two weeks after the trial, and before the entry of judgment, upon special motion the court granted an order "that the verdict rendered as $1,432.09 in favor of plaintiff be, and the same is, hereby amended, so as to have added thereto interest from the 1st day of January, 1905." Thereafter, and on October 31st, and not in the presence of the defendant, there was a calculation of interest to the amount of $150.56, and thereupon judgment was entered against the defendant for damages, $1,582.65, besides costs." On October 19th the defendant's motion for a new trial upon the minutes, upon all the grounds stated in section 999 of the Code, was denied by order entered that day.

We think that there was some proof upon which the jury could find that in December, 1899, Nikisch owed to plaintiff $1,432.09, and that plaintiff could have filed a lien against the property, and that, in consideration of plaintiff's not filing such lien, defendant promised to assume the payment of the Nikisch debt upon certain conditions which have been fulfilled. As defendant was the owner of the property, or a part thereof, he derived a direct benefit to himself from the abstention of plaintiff from filing a lien, which consideration took the promise out of the statute of frauds. "Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." White v. Rintoul, 108 N. Y. 222, 15 N. E. 318. There can be but little doubt that the defendant knew all about the work going on at the premises. The jury must have so thought. Defendant still owned the lot upon which all the buildings faced, and hence upon which the foundations made up of plaintiff's materials lay for the most part. He confesses that title had never parted from him, and he was $100 ahead by the Nikisch deposit. Nikisch failed December 15, 1899. Plaintiff made his last delivery about a week or so before. Under the mechanic's lien law he had 90 days to file his notice of lien, running the limit into March, 1900. Defendant admits that there was a meeting in March. Plaintiff and his superintendent say it was soon after the failure that meeting was had. At any rate, there seems little doubt that a meeting was had in the ninety day period. The jury had the issue plainly set before it, and decided for plaintiff on that. Defendant, as we have seen, owned the land upon which the foundations principally lay. It never passed from his hands. He afterward acquired the rear lot, subject to the lien of a Nikisch lien by Clifford L. Miller. He even had his deed to the 169th street plot made more certain by a new deed from the original grantors.

It is alleged that defendant knew of the contract of plaintiff, and furnished the anchor irons. The jury evidently believed the allegation to have been proved, even in the face of defendant's denial. The fol-

lowing is an extract from the lien law (Laws 1897, p. 516, c. 418, § 3; mechanic's lien on real property):

"A contractor, a subcontractor, laborer or materialman, who performs labor or furnishes material for the improvement of real property with the consent of or at the request of the owner thereof, or his agent, contractor, or subcontractor, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

The consent clause in the lien law proceeds upon an equitable principle that one who knowingly received the benefit of the labor or property of another in the form of improvement upon his land ought to have his property subjected to a lien for the value of such improvement. Butler v. Flynn, 51 App. Div. 225, 64 N. Y. Supp. 877. Where the vendor under an executory contract for the sale of real estate consents that the vendee take immediate possession of and erect a permanent structure on the premises, lienors who have rendered work, labor, and services to such structure may, after vendee's default, enforce their liens against the premises to the extent of the market value of the labor and material done and furnished. Beck v. University, 32 Misc. Rep. 567, 67 N. Y. Supp. 305. "A person who has contracted to sell real estate remains the 'owner,' within the meaning of the statute, until the title passes." Packard v. Sugarman, 31 Misc. Rep. 623, 66 N. Y. Supp. 30. It follows, then, that defendant, being the owner under an executory contract to sell, which was never fulfilled, came under the law as liable to those doing work or furnishing materials with his knowledge or consent. The jury having decided the fact of consent, the right to lien as against defendant existed in the plaintiff, and to forbear filing such was a valuable consideration. The witnesses having given contradictory testimony, and the court having distinctly charged as to the question of preponderance and credibility, without an exception, the verdict should not be disturbed, as there is sufficient evidence to sustain the verdict.

There is, however, another objection presented by defendant on this appeal, which we think well taken. The court, as we have seen, granted an order amending the verdict, as recorded, by adding interest in the sum of $150.56. It has been held that, even though the jury is discharged, the court has the power to correct the verdict, so as to make it conform to the real determination of the jury, if the motion is made at the term of the court at which the verdict was rendered. Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559. That doctrine, however, does not apply here; for it is not evident that the real determination of the jury was to add $150.56 interest to the amount allowed to the plaintiff. Even assuming that they intended to allow some interest on the claim, the date from which interest would have been allowed, and consequently the amount of such interest, is not clearly shown. As asked by defendant's counsel, was the interest to date from the beginning of the action, or from the date when Nikisch's indebtedness accrued, or from the date of defendant's promise to pay the Nikisch debt upon the completion and sale of the building, or from the date of such sale itself?

We think the judgment should be modified, by deducting therefrom the $150.56 allowed by the court below as interest, and, as so modified, the judgment and order denying the motion for a new trial should be affirmed, without costs to either party. All concur.