## MANGOLD STAVE & COOPERAGE CO. v. LUCAS E. MOORE STAVE CO.

### (Circuit Court of Appeals, Eighth Circuit. May 14, 1912.)

### No. 3,630.

1. SALES (§ 81*)—CONSTRUCTION OF CONTRACT—TIME FOR PERFORMANCE—
PRODUCT TO BE MANUFACTURED.

A contract, by which plaintiff agreed to make and deliver a stated
number of staves to defendant, made by correspondence, in which plain-
tiff stated its desire to provide for deliveries to be made within the
next 12 months, and defendant stated its preference to have from 2 to 3
car loads per month from the date of the contract, which would cover
the whole quantity in a year or less, *held* to bind defendant to receive
the entire quantity within a year.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec.
Dig. § 81.*

Contracts for sale of things to be produced or manufactured, see note
to Star Brewery v. Horst, 58 C. C. A. 363.]

2. SALES (§§ 384, 388*)—ACTION FOR BREACH OF CONTRACT—MEASURE OF
DAMAGES.

In an action for breach of a contract for the sale of staves to be
manufactured by plaintiff for defendant, by the refusal of defendant to
accept the same, the measure of damages, so far as relates to staves
which had been manufactured and were ready for delivery at the time
of the breach, is the difference between their market value at that time
and the contract price if the latter was greater than the former, while
as to those not manufactured the measure of damages is the difference
between the cost of manufacture and delivery and the contract price, if
greater, and, if there is a question as to how many had been manufac-
tured, it should be submitted to the jury to determine under instructions
giving the appropriate measure of damages applicable to those made and
those not made, and an instruction stating a single measure of damages
as applicable to both classes is erroneous.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107, 1108;
Dec. Dig. §§ 384, 388.*]

In Error to the Circuit Court of the United States for the Eastern
District of Missouri.

Action at law by the Lucas E. Moore Stave Company against the
Mangold Stave & Cooperage Company. Judgment for plaintiff, and
defendant brings error. Reversed.

This action was brought by the defendant in error, who, for convenience,
will be called "plaintiff," against plaintiff in error, who, for convenience,
will hereafter be called "defendant," to recover damages for the breach of
a contract for the sale and delivery of barrel staves. A trial was had, re-
sulting in a verdict for the plaintiff.

The contract and transactions between the parties grew out of certain
correspondence, by letters and telegrams. The following excerpts therefrom
will sufficiently explain the controversy:

On September 18, 1907, plaintiff wrote defendant a letter, stating:

"Before going too far in the whisky barrel trade this fall and winter (it
promising to be a record smasher) we want to provide for at least some
of our beer stave customers for deliveries over the next twelve months.
We can't see proportionate returns in it at under 9c and 7c respectively
St. Louis for halves and quarters per 4500″ of width for halves and 4250″
for quarters and if you want to book 100 M of each we should know at once.
We could supply a few whole barrels at $140.00 per 4500″ at bilge, St. Louis."

To this the defendant answered, under date of September 26, 1907, as follows:

"Replying to your favor of the 18th inst., * * * will say that we will accept your offer for 100,000 each of half (½) and quarter (¼) barrel beer staves at $90.00 per M for half (½) barrel staves, and $70.00 per M for the quarter (¼) barrel staves, all delivered Carondelet, Mo.; and would like, if possible, to have from 2 to 3 car loads per month from now on. If you are willing to book our order for about two (2) or three (3) car loads of 1/1 barrel staves, full dressed, at $135.00 per M f. o. b. Carondelet, Mo., you may do so. All of the above stock to be standard specification, as adopted by Beer Stock Manufacturers' Ass'n. * * * Kindly let us hear from you."

Under date of September 30th, plaintiff wrote defendant:

"We acknowledge yours 26th with order for 100 M quarter and 100 M half bbl. staves, and by same mail we have received orders for barrel staves at $145.00 Chicago, so that you see we cannot consider your offer of $135. We quoted you low when we wrote $140.00 in ours of 18th. We declined orders last week at $139.00. Widths: If you will refer again to our letter of 18th you will note that we quoted you 'per inches of width at bilge,' and not per 1,000 pcs with guaranteed width. * * * Payments: Our costs are so high and our turn-over so low that we must ask you to let us draw at 60 days sight against B/L for 75% of value (estimated) f. o. b. mill. * * * Shipments: Two of our mills are just getting under way on barrels and hogsheads and we hope to send you shipments in a week or so. We note you also want two cars halves promptly."

To this defendant replied, under date of October 3d:

"Your favor of the 30th ult. received and carefully noted. We note our error in stating $90.00 per M for half and $70.00 per M for quarter barrel staves, instead of per 4500″ at bilge for halves and 4250″ at bilge for quarters. These measurements must be inside of sap. In regard to payments will say that we would prefer to discount at ten days from date of invoice, and should car not arrive within that time we will deduct freight and any claims for shortages in measurement or in section from the next shipment each time. If this is not satisfactory you may do as you suggest,—draw on us at 60 days sight for 75% of value (estimated) f. o. b. mill, this will be agreeable to us."

October 5th plaintiff wrote defendant:

"Acknowledging your favor 3d, will say that we have entered your order accordingly and note that we have the option of drawing at 60 days for approximately 75% or accepting discount for cash ten days from date of invoice. We have one customer in Milwaukee who has bought more quarters than he is going to need between now and January and if you can use an additional 50,000 to 75,000 pcs we might get him to cancel and let you have them. These we sold to him some time ago and there would be a saving in freight of about $3.00 per 1,000 in shipping them to St. Louis so that we might get them for you for $67.00 delivered per 4250″."

In answer to that, defendant, under date of October 8th, wrote:

"Your favor of Oct. 5th to hand and noted. In reply will say that we will accept your offer of 50,000 to 75,000 pcs quarter barrel staves at $67.00 per 4250″ delivered Carondelet, Mo. We would ask that you kindly rush these shipments in as rapidly as possible as we would like to get them stacked up on our yard before the busy season opens."

October 15th defendant wrote plaintiff:

"Yours of Oct. 10th received and carefully noted. We fully understood the conditions of the offer contained in yours of the 5th. * * * However, as you already have our order for 100,000 quarter barrel staves at $70.00, we feel that you ought to accept our order for an additional 150,000 at $67.00 delivered. Kindly advise if you are willing to do this. If so, you may book the order on the same terms and conditions as the order for the 100,000. We would also like to know if there are any prospects of getting more half, whole and hogshead staves, and what quantities and prices delivered. Kindly let us hear from you at your early convenience. How soon may we expect shipment of the hogshead staves for which you now hold our order?"

To which plaintiff answered, under date of October 17th:

"We are in receipt of your letter 15th and note what you say about further order for quarter bbl. beer staves. * * * We note you want to take an order for an additional 150,000 quarter bbl. staves at $67.00 St. Louis per 4250″ of width. We will have to do a little figuring on this before we can advise you definitely. * * * In regard to half and whole bbl. staves and also beer hhd. staves the prospects with us are not at all good that we will be able to do anything for early shipment. We, of course, can do a whole lot of things if we are given the time, but really think that for the present we have enough orders booked. We may get another small car of hhd. staves, but cannot tell definitely until some time later on."

To that, under date of October 19th, plaintiff wired defendant:

"Decline your offer sixty seven; best can do is hundred fifty thousand at sixty eight fifty. Require immediate telegraphic acceptance."

And on the same day wrote:

"Referring to our letter of the 17th, we wired you this morning that we cannot accept your offer of $67.00 for the quarter bbl. staves and that best we can do is $68.50 for the 150,000. If you want us to take this order you must let us know at once as we can sell right now a portion of this quantity at a better price. Our offer of course is for 4500″ with f. o. b. cars St. Louis."

And on October 19th defendant wired plaintiff:

"Enter our order one hundred fifty thousand at price quoted."

On October 23d defendant wrote plaintiff:

"Your favor of the 19th inst. to hand. We also received your telegram of the 19th inst. and immediately wired you as follows,—'Enter our order one hundred fifty thousand at price quoted.' The price $68.50, of course, is for 4250″ width f. o. b. Carondelet, Mo. Our confirmation of telegram has been delayed on account of the writer's absence from the city. We would request that you give us some idea as to just how fast you will make shipments of the 250,000 quarter barrel staves, and the 100,000 half barrel staves, and how soon you expect to begin shipments."

On October 24th plaintiff wrote defendant:

"As per your telegram October 19th, we enter your order for 150,000 quarter barrel full dressed prime beer staves at $68.50 per 4250″ of width f. o. b. cars St. Louis, Mo."

Under date of October 25th plaintiff wrote defendant:

"We are in receipt of your letter 23d and note what you say about your orders for quarter bbl. staves. We expect to push right along with the execution of all of your present orders and have shipped one car of half bbl. staves against your order August 20th. We have also shipped a mixed car of halves and quarter bbls. against your order October 3d. We hope to get shipped your car of 31″ bbls. and your car of 36″ hhd. staves before very long. Are writing our mill people that you are wanting this stock urgently and we hope to receive early advices that same is on the way."

On November 30th defendant wrote plaintiff:

"Your several letters have been received and carefully noted. We have delayed replying to your request for a remittance on account of our inability to make collections due us. We are experiencing considerable difficulty in that line just now. We, however, are expecting a nice large remittance the early part of next week, at which time we will let you have check as per your request."

On December 4th plaintiff wrote defendant:

"We are in receipt of your letter 30th, and certainly hope you will get in the collections that you are expecting which will enable you to send us a check for the amount you expected to send. We will be pleased to promptly acknowledge receipt of same."

Under date of December 5th defendant wrote plaintiff:

"We are compelled on account of the present stringency of the money market to request that you make no more shipments of stock until further advised. We are also obliged to ask for the 60 days from date of invoices on the stock already shipped which we hold B/L for. The payment which we were expecting to receive this week we were forced to extend 60 days.

We very much regret to take these steps, but as we are shipping absolutely nothing we cannot do otherwise at this time. We, however, are hopeful that the present condition of affairs in general will brighten up in a very short time."

January 25, 1908, defendant wrote plaintiff:

"Your favor of the 23d inst. to hand and in reply will say that we are very much in the dark as to just what we are going to need. Just at present we would not care to contract for any more staves for the reason that we have already contracted for a very large quantity; more, in fact, than present prospects indicate a need for, therefore, cannot give you anything definite."

February 4th defendant wrote plaintiff:

"We are in receipt of letter of the 31st ult. from your Mr. Knox at New York and in reply will say that we cannot use more staves than we have already contracted for and, in fact, we do not think we will have use for all of them, unless prohibition takes a decided turn in the near future. We would very much like to contract with you for the 25,000 hogshead staves, but do not care to further obligate ourselves."

On the same date defendant wrote plaintiff further:

"Your favor of Feb. 1st inclosing invoice and B/L for car half barrel staves received. We do not understand why you have shipped this car as we have not given out instructions to resume shipments. Our yards are filled to their capacity now with staves and heading and it is going to inconvenience us considerably to take care of this car. Please do not ship any more staves until we write you to do so. Regarding payment will say that we will have to have 90 days on this shipment as we have all of our money tied up in stock and are not shipping anything—have not turned a wheel for about 90 days and cannot say just when we will start up."

February 6th plaintiff wrote defendant:

"Yours 4th received and * * * note that we are not to ship any more staves until further instructed, as your yards are full and shop closed down since 90 days and don't know when you will start up, also that you never instructed us to resume shipments. * * *"

February 13th plaintiff wrote defendant:

"We are quite agreeable to curtailing shipments to any reasonable extent but to suspend entirely you must understand is out of all reason and we must ask you to urge Mr. Schenk to take in an occasional car during the coming two months. We made all of our calculations accordingly and as the writer is going away early next week to be absent for two months, any interruption of our arrangements would inconvenience us no little and we hope you will be kind enough to attend to this matter for us."

February 12th defendant wrote plaintiff:

"In regard to further shipments will say that we fully appreciate your position in this matter and realize the difficulties with which you have to contend in getting stock to the railroad; but we hardly feel that you can appreciate the position in which we are placed. As stated in ours of the 4th inst. our yards are filled now to their capacity and the expense of unloading and hauling staves to a distant part of our yards is more than double the usual expense of unloading a car. We have a very large quantity of cooperage made up and in storage and a very much larger quantity of staves, heading and hoop steel on hand in all of which our money is tied. We have very few orders on hand, those we have are very indefinite, calling only for such cooperage as the breweries will need during 1908. Also we have discounted quite a bit of paper at the banks and do not wish to make further loans until we have something more definite on which to base calculations. We, of course, do not wish to break the contract, but wish shipments held up until business opens up some. Just as soon as we have some orders calling for definite shipments we will advise your N. O. office to resume shipments."

February 14th plaintiff wrote defendant:

"Acknowledging yours of the 12th. We thank you for your promise to receive further shipments just as soon as it is possible for you to do so.

* * * We will go ahead and get staves in shape for shipment and hope to hear very soon that you are ready to receive them."

March 9th plaintiff wrote defendant:

"We would like to hear from you if there are any prospects of your being able to take from us this month couple of car loads of beer quarter bbls. or car load of each of halves and quarters."

March 18th defendant wrote plaintiff:

"Replying to your favor of the 9th inst., regret to advise that we are still unable to receive shipments. Our Mr. Schenk has just returned from a trip through the north and west and there is very little prospect for business for some weeks yet. Will advise you when we are ready to receive shipments."

May 14th defendant wrote plaintiff:

"We regret that we have been unable to receive beer staves in accordance with your expectations, but it is absolutely beyond our power to force the brewers of the country to buy cooperage and we can assure you that we have spared no effort in attempting to create a demand. We also are under heavy investments and considerable expense holding the stocks and our operations have been stopped entirely for the past few months, and still no prospects for business, on account of the prohibition wave which has been sweeping the country. We can give you no assurance whatever as to when we will be in position to receive additional shipments."

May 16th plaintiff wrote defendant:

"We have yours of the 14th and note that you are unable to force the brewers and that you are under considerable investment holding stocks, etc., and that consequently you cannot give us any assurance at this time as to when you will be in position to receive further deliveries on contract. This of course is a very unsatisfactory position for us to be put in but as the writer will doubtless be in St. Louis in the course of the next few weeks, we suppose we will have to let the matter rest until he has the pleasure of seeing you."

July 20th plaintiff wrote defendant:

"We received your recent favor, from which we note that business has not improved with you much of late. We are very much cramped for room at our yards and our insurance rate is 4½% while our interest rate is 8%. Beyond that, the Railroad Companies are expecting to raise their rates of freight shortly and we would like to transfer a few of these cars from our yards to yours at St. Louis on the understanding that we will not expect you to pay for them before October. You will oblige us very much by authorizing shipment of two or three carloads. You will want to get some staves in anyway before the winter weather sets in as it is much more expensive handling at your end and you want to be prepared for the orders you will receive for packages early in the winter."

July 24th defendant wrote plaintiff:

"Your favor of the 20th inst. to hand and note what you say regarding interest and insurance rates, etc. We have a very large stock on hand now on which we also have to pay a very high insurance and interest rate, and the probability of doing any business during the balance of the season is very remote. Should, however, our prospects brighten up to any considerable extent, will let you hear from us. At present we cannot receive any shipments."

September 10th plaintiff wrote defendant:

We are patiently awaiting your authority to renew our shipments to you of beer staves on contract, being prepared to ship and anxious to ship what is due you. Two or three cars would help in the next 30 days, if you cannot take more. We are not making sale of any of this stock, depending upon you to take delivery of it all—we hope before many more months go by."

September 15th defendant wrote plaintiff:

"Replying to your favor of the 10th inst. will say that there has been practically no change in conditions as regards ourselves since last we wrote you and regret to advise that we are still unable to receive shipments of stock, trust however that matters will not continue in this state much longer."

September 17th plaintiff wrote defendant:

"Your people wrote us under date of 15th, that you are still unable to receive shipment of stock, business being still very quiet. We are carrying a terrible load in the way of sold stock which we are holding for our customers but most of them are allowing us to ship an occasional car load and we hope you will find it possible to allow us to ship two car loads of staves during Oct. and Nov. and we will be glad to take your 60 days' acceptance against same. This would help us considerably and we hope you will favor us."

September 26th plaintiff wrote defendant:

"Your favor of the 21st to hand and we regret to note that you are not in a position to authorize shipments of staves. We will consequently let the matter rest for a further few weeks, hoping that you will meanwhile find it possible to send us some shipping orders. * * *"

On November 6th plaintiff wrote defendant:

"Surely now that the election has passed, you will be able to authorize us to make some shipments of full dress beer staves on our contract with you. It is nearly a year now since you stopped us and we think now that there is more certainty of activity in your line during the coming spring and you should relieve us of part of this load promptly and certainly we have been carrying it for a good long time, at no little inconvenience and expense to ourselves."

February 4, 1909, plaintiff wrote defendant:

"We now find ourselves in the position where we must ship some staves and have authorized our Columbus mill to send you one carload of prime quarters. We are not going to push you to pay for this car promptly and we regret that it seems necessary for us to ship it contrary to your wishes. but we have been carring staves for you now over a year and crippled ourselves in consequence not to speak of the cost of 8% money and 4% insurance which amounts to about $6 per 1000 in course of a year."

February 11th defendant wrote plaintiff:

"Your favor of the 5th inst. to hand and noted, in reply would say that we cannot accept any further shipments of staves. If the car you mention has been shipped we will pay the freight on it and stack the staves up subject to your order."

March 20th, plaintiff wrote defendant:

"Your favor of the 11th Feby. came duly to hand and we have not shipped you any more staves. We will expect you to receive and pay for the one car load in due course and will also expect you to take deliveries to complete contract within a very short time. Your letter of Feby. 11th might lead us to believe that you have no intention of taking any further deliveries on contract at any time. If this is your meaning, kindly say so."

April 7th defendant wrote plaintiff:

"In reply to your favor of the 20th ult. beg to advise that we find nothing in our correspondence to bind us to take staves within any certain limit of time, but rather as we need them. Business has been very dull with scarcely any packages selling and we have on hand practically all the staves you have so far shipped us, and therefore cannot accept any more shipments until further notice. As soon as business opens up and we can move our present stock we expect to take further shipments and are placing no orders whatever for staves with any one else."

April 11th plaintiff wrote defendant:

"Replying to yours of the 7th. We think that the correspondence between us shows clearly that you were to take deliveries of staves within certain time. Even had the deliveries been less specifically stated, acceptance of the staves 'within a reasonable time' would necessarily apply. We have waited beyond a reasonable time and have carried and are still carrying probably a heavier load than have you. According to your view, you might not use these staves in ten years and even now you do not indicate when you will be able to use them. It is necessary that we do something in the matter rather than continue in suspense and we must insist upon your taking deliveries or your authorizing us to dispose of some quantities elsewhere for your account. * * * According to your construction of the

contract you expect us to hold these staves until you may require them. Were we to do this the loss might fall heavily on you and as you do not appear to be very hopeful of being able to use these staves this season, we would certainly recommend that you authorize us to endeavor to place them elsewhere for your account. It is quite out of the question to think of our carrying stock over into 1910."

April 23d defendant wrote plaintiff:

"Replying to your letter of the 11th, we are under no obligations to you to take any staves within any certain time. We have never agreed to take staves except when we need them or can use them, and when we need them or can use them in the future we will direct you as to delivery, just as we have in the past, and we desire it distinctly understood that you have no authority from us to sell any staves to any person upon our account. As before stated, when we need any more staves we will place our order with you as we have in the past."

May 25th plaintiff wrote defendant:

"We observe that your state Legislature has adjourned without passing the threatened 'State Wide' Prohibition Bill and that consequently Missouri is not likely to be converted into a 'Sahara Desert' for at least another two years. We congratulate you and at the same time would like to know that you now feel sufficiently reassured as regards future business, to justify your taking in a few carloads of the staves we owe you on contract."

August 4th plaintiff wrote defendant:

"Several months have elapsed since we last heard from you respecting deliveries under our contract of October, etc., 1907. In the course of the last eighteen months you have refused to accept deliveries of any substantial number of staves under the contracts above referred to, and we have been showing you every indulgence in the matter and in so doing have shouldered a loss in carrying charges, insurance, etc., which, normally, should have fallen upon yourselves. * * * Frankly, we have consulted counsel as to your contention that, in view of the fact that the contract between us does not provide for any time of delivery under it, you were obliged to take the staves 'only when you need them or can use them' (i. e., only if you found it convenient to do so), and we have been advised that your position is wholly untenable. In brief, we have reached a point where patience has ceased to be a virtue and we now propose to enforce our rights under our contract with you, and hereby give you notice that we shall expect you to accept deliveries within the next four months of the balance of the staves ordered by you under the terms of our contracts with yourselves, the said deliveries to be in such quantities (amounting in the aggregate to about 250,000 staves) and at such times (within the four months' period) as you shall direct, and that if you fail to accept these deliveries we shall take such action as we may be advised and shall hold you for any loss we may suffer or may have suffered by reason of your acts in the premises."

August 23d defendant wrote plaintiff:

"Replying to your letter of the 4th inst., as we wrote you April 23d last, we have never agreed to take staves except when we might need them or could use them, and we repeat, when we need them or can use them in the future we will direct you as to the delivery, just as we have done in the past. We are not alarmed in the least at your threat, in your last letter, to bring legal proceedings against us, for we have caused you no damage whatever, and there is nothing in our correspondence which binds us to take any quantity of staves within the next four months, or any other period. You make the insinuation in your letter that you have been carrying staves for us. If you have been carrying staves for us you have done so without any authority from us, and you should distinctly understand that we shall never pay you anything for staves except as we order them. In reference to the last car of staves shipped to our address without authority from us, and which were stacked on our yard subject to your order, will say that we are still not in position to use them and ask that you reimburse us for the freight, handling and storage charges, the staves remaining subject to your order. In conclusion, we have tried to make our position clear and trust that you may fully understand it."

August 28th plaintiff wrote defendant:

"We acknowledge your letter of the 23d inst., and in reply would say that our previous letter to you clearly defines our position and we have nothing to add except to say that we will wait until expiration of the four months' period we have given you, then place the matter in the hands of our attorney. Meanwhile, the car load of staves which you mention in your letter as lying on your yard are there for your account and at your risk and we look to you for payment of our invoice for said shipment and would thank you to send us check promptly."

September 3d defendant wrote plaintiff:

"Your favor of the 28th ult. to hand and noted. We think we have made our position in the matter plain and have nothing to add. In reference to the car load of staves mentioned would say that we did not order them, unloaded them only subject to your order and stored them on our yard without responsibility on our part. We cannot use them, will not pay for them, and look to you for reimbursement for the freight paid on them, and also for handling and storage charges, amounting altogether to $100.25 up to the 1st inst. Kindly send check for this amount and advise disposition."

September 10th plaintiff wrote defendant:

"We have your favor of Sept. 3d. In view of the attitude you assume there seems nothing left but to ask the court to determine which of us is right. In other words, you seem to believe, and, in fact, have definitely stated, that the absence of any statement as to the time of delivery in our contract leaves you free to accept such deliveries whenever you find it convenient to do so. On the other hand, our contention always has been that as the contract is silent as to the dates of delivery, delivery within a reasonable time was contemplated. To come down to the particular case, we feel that the delivery of the car now on your yards was a delivery within a reasonable time and we shall thank you if you will forward your check for the value thereof. Respecting the balance of your contract would say that we are ready to deliver the staves and heading upon receiving your order to do so, provided we receive your advices before the expiration of the four months' period referred to in a previous letter."

September 14th defendant wrote plaintiff:

"Replying to your favor of the 10th inst. we shall not accept or pay for the car of staves mentioned in your letter, for the very simple reason that we never ordered the staves and, therefore, they remain here stored, subject to your order and at your own risk and expense. As we have before written you, we take the position that there is nothing in our correspondence which obligates us to take any amount of staves from you at any particular time, and we have not reached the point where we desire to engage any amount of staves to be delivered at any particular time, and we will pay for none except as ordered by us. Trusting that our position is still clear we remain."

Plaintiff placed its claim in the hands of an attorney, and the attorney wrote to defendant from New York City, under date of December 21st, advising defendant that the claim had been placed in his hands for breach of contract, and asking that some disposition be made of it.

Under date of February 23, 1910, defendant wrote plaintiff:

"We are now in a position to accept the car load of quarter barrel staves which was shipped to us some time ago and which are stored in our yard now. We herewith inclose you our check for $1,400.04, to pay for same. We will be in a position to use another car of quarter barrel staves by the 15th or 20th of March, 1910. Ship them as usual % Iron Mountain West Yard, Carondelet, Mo. Terms same as heretofore."

To which plaintiff replied, under date of March 3, 1910:

"We have received your letter of February 23d and note that you now desire to accept the car load of quarter bbl. staves which was shipped to you some time ago, and that you inclose your check for $1,400.04, to pay for the same. We shall not accept this check in full payment of the said delivery, and accordingly herewith return same, but if you see fit to remit to us the sum of $1,472.37, that is, the amount of our bill, together with interest thereon from the 12th day of April, 1909, when the terms of credit, upon

which this car load was sold, expired, we shall accept the remittance and reduce our claim against you pro tanto. You must understand, however, that such acceptance would be absolutely without prejudice to the prosecution by us of our outstanding claims against you for damages for breach of contract. Respecting your statement that you will be in position to use another car of quarter bbl. staves by the 15th or 20th of March, would say that we absolutely refuse to have any further business dealings with you until the matters in controversy now in the hands of our respective attorneys are adjusted."

Defendant, under date of March 10th, wrote plaintiff:

"We herewith again inclose our check to your order in the sum of $1,400.-04 to pay for the carload of staves which we notified you we accepted, by our letter of the 23d ult. We deny owing you any interest whatever, but for the purpose of getting our affairs straightened out without a lawsuit and by way of compromise, we also herewith inclose our check in the sum of $72.33 to cover the interest which you claim. Now these two items pay you for all the staves we have accepted and we propose to pay you promptly hereafter when we accept staves from you. And we now ask that you ship us another car of quarter staves by the 20th day of March, 1910."

Under date of March 17th plaintiff wrote defendant:

"Our New Orleans office has advised us that they have received from you, your check for the sum of $1,400.04 together with your check for further sum of $72.33 to cover interest in payment of the carload of staves shipped to you some time ago. We are accepting these checks in compliance with the terms of our letter to yourselves of the 3d day of March, 1910. We wish it clearly understood, however, that this acceptance is absolutely without prejudice to our holding you for the damage we have suffered by reason of your refusal to take other deliveries of staves, and is merely in payment of all the staves that you have accepted. As to the other matters in controversy we have nothing to add to our letter of March 3d, 1910."

March 26, 1910, defendant wrote plaintiff:

"We have heard nothing further from you in reference to the car of quarter barrel staves ordered in our letter of Feb. 23d, and again in our letter of March 10th. Please advise us by return mail when we may expect shipment as we are running short of quarter-barrel staves and will be needing the car load in question shortly."

Under date of April 1, 1910, plaintiff wrote defendant:

"Replying to your letter of the 26th we respectfully call your attention to the following clause in our letter to yourselves of March 3d. 'Respecting your statement that you will be in a position to use another car of quarter barrel staves by 15th or 20th March we would say that we absolutely refuse to have any further business dealings with you until the matters in controversy now in the hands of our respective attorneys are adjusted.' Again, in a subsequent letter we say 'as to the matters in controversy we have nothing to add to our letter of March 3d which we above refer to.' We think that the quotations above given from our previous letters amount to a full reply to your communication of March 26th."

From October 24, 1907, to February 12, 1909, plaintiff shipped to defendant 11 cars of staves under the contracts in question, which were received and accepted by defendant, said shipments consisting of 65,201 half barrel staves and 71,243 quarter barrel staves.

The other testimony in the case material to the issues relates chiefly to the cost of manufacturing staves and delivering them at Carondelet, Mo.

In August, 1910, plaintiff commenced this action against defendant to recover its damages for a breach of the alleged contracts, issues were joined, a trial had, and verdict and judgment in favor of plaintiff rendered in the sum of $5,923.80.

The court, in its instructions to the jury, among other things, said: "You are instructed that the letter of the plaintiff, dated September 18, 1907, and the letter of the defendant, dated September 26, 1907, constitute a contract beween the plaintiff and defendant for the 200,000 staves"—to which the defendant duly excepted.

The court further instructed the jury: "The measure of damages in this case is the difference between the contract price and the price at which these staves could have been put down at Carondelet, in this city.   That is the measure of damages alleged under this contract"—to which defendant duly excepted.

David W. Hill (A. E. L. Gardner, on the brief), for plaintiff in error.

S. T. G. Smith (H. A. Baker, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge (after stating the facts as above). [1] It is clear, we think, from the correspondence at the time the orders for the staves were given by defendant and accepted by plaintiff, that it was mutually understood by both plaintiff and defendant that the staves were to be delivered by plaintiff, and accepted by defendant, within the period of one year, and had plaintiff insisted upon such delivery within a year, and defendant refused to receive all of them within that period, plaintiff would have been entitled to insist that the contract was broken at the expiration of the year.   It, however, appears that plaintiff, at the solicitation and request of defendant, waived this provision of the contract and granted defendant further time in which to order and accept staves under the contract. That, however, did not modify the contract so as to permit it to remain enforceable by defendant ordering staves in the future whenever it should see fit over any period of time.   But the plaintiff had a right to insist that defendant should comply with the contract within a reasonable time.   We think it apparent from defendant's letters of August 23, September 3, and September 14, 1909, that defendant repudiated the contract and insisted that it was under no obligation to take staves except as it should desire them in the future, declaring that it would not comply with the contract in the future, but would only order and accept the remaining part of the staves for which the contract provided whenever it saw fit;  these letters being in response to the letter of the plaintiff of August 4, 1909, insisting that it fully perform the contract within four months thereafter, and that plaintiff was authorized to treat the contract as then broken on the part of defendant.

We think it clearly appears from the correspondence that plaintiff had manufactured the staves for defendant, or at least a considerable portion of them, and had them on hand.   This, we think, is clearly shown from plaintiff's letter of date July 20, 1908, wherein it states:

"We are very much cramped for room at our yards and our insurance rate is 4½% while our interest rate is 8%."

And letter of September 17, 1908, wherein it says:

"We are carrying a terrible load in the way of sold stock which we are holding for our customers, but most of them are allowing us to ship an occasional car load and we hope you will find it possible to allow us to ship two car loads of staves during Oct. & Nov."

Letter of February 4, 1909, in which plaintiff said:

"We are not going to push you to pay for this car promptly and we regret that it seems necessary for us to ship it contrary to your wishes, but we have been carrying staves for you now over a year and crippled ourselves in consequence, not to speak of the cost of 8% money and 4½% insurance, which amounts to about $6 per 1,000 in course of a year."

Letter of April 11, 1909, in which plaintiff said:

"It is necessary that we do something in the matter rather than continue in suspense and we must insist upon your taking deliveries or your authorizing us to dispose of some quantities elsewhere for your account. * * * It is quite out of the question to think of our carrying stock over into 1910."

Also letter of August 4th, wherein it says:

"In the course of the last eighteen months you have refused to accept deliveries of any substantial number of staves under the contracts above referred to, and we have been showing you every indulgence in the matter and in so doing have shouldered a loss in carrying charges, insurance, etc., which, normally, should have fallen upon yourselves."

In Kingman & Co. v. Western Mfg. Co., 92 Fed. 486, on page 490, 34 C. C. A. 489, on page 493, Judge Sanborn, writing the opinion of the court, announced five rules as determining the measure of damages for the breach of a contract to manufacture and deliver articles. It was there announced that the measure of damages for a breach resulting from failure to accept articles which had been made and were ready for delivery at the time of the breach is the difference between the market value and the contract price of the articles at the time of the breach, if the latter be greater than the former.

[2] Applying that rule to the case in hand, we think the court should have submitted to the jury, under the evidence, the question of fact as to what proportion of the staves called for by the contract had been manufactured and were on hand ready to be delivered, if any there were, at the time of the breach of the contract on the part of defendant, and instructed the jury that the plaintiff's damages as to such portion of the staves was the difference between the market price and the contract price, if the contract price exceeded the market price.

As to the other staves to be furnished under the contract, and which had not been manufactured, ready for delivery, if any, then the damages should be determined according to the applicable rule stated in Kingman & Co. v. Western Mfg. Co., supra.

The trial court, however, treated the case as one in which none of the undelivered staves had been manufactured, ready for delivery. In this respect an error was committed, for which the judgment is reversed, and a new trial granted.